Connie GEORGE, Plaintiff–Appellant,

v.

RUSSELL STOVER CANDIES, INC., and Karla Glass, Defendants–Appellees.

No. 02–5592.

United States Court of Appeals, Sixth Circuit.

July 16, 2004.

William O. Bush, Law offices of William Bush, Mary Dee Allen, Cookeville, TN, for Plaintiff–Appellant.

Kenneth S. Williams, Madewell, Jared, Halfacre & Williams, Cookeville, TN, for Defendant–Appellees.

Before: KENNEDY, MARTIN, and ROGERS, Circuit Judges.

KENNEDY, Circuit Judge:

Plaintiff Connie George ("plaintiff") filed this action against defendant Russell Stover Candies, Inc. ("Russell Stover"), her former employer, and defendant Karla Glass, the personnel clerk of Russell Stover, alleging that plaintiff's termination of employment violated the Family and Medi-

cal Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.;* Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.;* and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. § 4–21–302 *et seq.* Plaintiff appeals the district court's grant of summary judgment to defendant Russell Stover on all of plaintiff's claims and its grant of summary judgment to defendant Glass on plaintiff's FMLA and THRA claims.[1] Plaintiff also appeals the district court's denial of her motion for partial summary judgment against both defendant Glass and defendant Russell Stover on plaintiff's FMLA and THRA claims.

## I. Background

Plaintiff George began her employment at Russell Stover on October 6, 1992. On October 30, 1997, Russell Stover terminated plaintiff pursuant to its "no fault" attendance policy. The attendance policy dictated a progressive system of discipline, ranging from warnings to suspension to discharge, based upon the accumulation of "occurrences" for unapproved absences or "tardies," which comprised late arrivals or early departures. The policy excluded approved absences or tardies, including FMLA-qualified leave, from designation as punitive occurrences. An unapproved absence for one to three consecutive work days constituted a single absence occurrence. The accumulation of a sixth absence occurrence within a rolling six-month period preceding the date of the most recent infraction ("the relevant six-month period") triggered a three-day suspension; a seventh absence occurrence

1. While the district court granted defendant Glass partial summary judgment on plaintiff's Title VII claim, plaintiff does not appeal this summary judgment order. Moreover, while plaintiff, per her notice of appeal, purports to appeal several of the district court's evidentiary or procedural rulings, plaintiff has present-ed no argument on these rulings in her briefs and, thus, has failed to preserve such claims for appeal. *See Sommer v. Davis,* 317 F.3d 686, 691 (6th Cir.2003) (holding that the appellants abandoned an issue for purposes of appeal where they failed to argue it in their briefs).

triggered a termination. An employee's unapproved tardy constituted a single tardy occurrence. However, an employee's absence for more than half of her shift, where she appeared at work, constituted a double tardy for which she received two tardy occurrences. The accumulation of an eighth and ninth tardy occurrence within the relevant six-month period triggered a three-day suspension and discharge, respectively. Work Rule 1.7 provided that "abusers of the purpose and intent of the attendance guidelines will be subject to termination at the third suspension in six months." Thus, Work Rule 1.7 dictated the termination of an employee who received three attendance-related suspensions—whether for absences, tardies, or a combination of both—within the relevant six-month period. Plaintiff conceded that she understood and was familiar with the operation of both the attendance policy, in general, and Work Rule 1.7, in particular.

Russell Stover had a written procedure requiring all employees to report their tardies or absences on an answering machine maintained at defendant Glass' desk by providing their name, their supervisor's name, and the reason for the absence or tardy—whether it was due to an illness or a personal reason. Certain authorized personnel had access to this answering machine for purposes of compiling the employees' reported information. Pursuant to this call-in policy, however, employees need not have provided the details of the underlying illness; rather, the logs documenting the calls would simply reflect either "personal" or "illness" as the reason for an absence or a tardy. Plaintiff conceded that she understood and was familiar with Russell Stover's call-in policy.

Under Russell Stover's FMLA policy, only its personnel office was authorized to handle an employee's request for FMLA leave. In giving the requisite notice of the need for FMLA leave, an employee could either call or visit defendant Glass, who was then required to give the employee an FMLA packet, which contained various FMLA forms concerning notice, a request for leave, and medical certification. Neither defendant Glass nor an employee's shift supervisors were authorized to grant or deny an employee's request for FMLA leave; rather, only the personnel manager had such authority. Russell Stover determined whether an employee's health condition underlying her FMLA leave request was FMLA-qualifying only upon receiving the requisite medical certification forms within a specific time frame. Absent the employee's compliance with this medical certification process, Russell Stover counted her leave under its attendance policy. Plaintiff conceded that she understood and was familiar with Russell Stover's internal policy regarding employee requests for FMLA leave.

Plaintiff's claims surround Russell Stover's termination of her, pursuant to Work Rule 1.7 of its "no fault" attendance policy, based, in part, upon its assessment of attendance occurrences under that policy for certain of her leaves of absence taken in 1997. We will address those leaves of absence in our analysis of plaintiff's claims.

## II. Analysis

We review the district court's order granting summary judgment *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v.*

*Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* We must draw all justifiable inferences from the evidence in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "We may affirm a decision of the district court if correct for any reason, including one not considered below." *See United States Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL–CIO,* 330 F.3d 747, 750 (6th Cir.2003).

### FMLA Claims

The FMLA affords an eligible employee up to twelve weeks of leave within a twelve month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of . . . [her] position," among other qualifying reasons. 29 U.S.C. § 2612(a)(1)(D). The term "serious health condition" signifies "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). 29 C.F.R. § 825.114(a)(2)(ii) provides that a "serious health condition involving continuing treatment by a health care provider includes . . . [a]ny period of incapacity due to pregnancy, or for prenatal care." *See* 29 C.F.R. § 825.114(e) (noting that an absence for such incapacity qualifies for FMLA leave "even though the employee . . . does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days," and illustrating such qualified leave as a pregnant employee being unable to report to work due to severe morning sickness). The FMLA permits an employee whose serious health condition—such as pregnancy—renders her unable to perform her job to take such leave "intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1); *see* 29 C.F.R. § 825.203(a) (defining "intermittent leave [a]s leave taken in separate blocks of time due to a single qualifying reason" and a "reduced leave schedule" as a reduction in "an employee's usual number of working hours per workweek, or hours per workday").

To invoke the FMLA's protection for this qualifying reason, the eligible employee, during her employment, must request leave and give the employer notice that she is requesting such leave for a serious health condition that renders her unable to perform her position's duties. *See Brohm v. JH Props.,* 149 F.3d 517, 523 (6th Cir. 1998) (holding that the plaintiff's FMLA claim cannot lie where he requested medical leave and received medical attention for his serious health condition only after the termination of his employment). However, the eligible employee need not expressly mention the FMLA as the source of her right to request such leave. *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 451 (6th Cir.1999). Rather, the critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of her request to take leave for a serious health condition that rendered her unable to perform her job. *Brohm,* 149 F.3d at 523.

The eligible employee must also give the employer this substantive notice within the requisite time frame. The time frame depends on the foreseeability of the needed leave. *Compare* 29 C.F.R. § 825.303(a) (providing that an employee should give the employer notice of the need for the leave "as soon as practicable under the facts and circumstances of the particular

case") with 29 U.S.C. § 2612(e)(2)(B) (requiring an eligible employee to "provide the employer with not less than 30 days' notice, before the date the leave [for her serious health condition] is to begin" where that leave is foreseeable based upon planned medical treatment, but requiring that employee to "provide such notice as is practicable" where "the date of treatment requires leave to begin in less than 30 days"). Once an employer receives timely notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA. *Hammon*, 165 F.3d at 450. For instance, an employer may require the eligible employee to provide, in a timely manner, certification by a health care provider. 29 U.S.C. § 2613(a).

The FMLA renders it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right" that it affords. 29 U.S.C. § 2615(a)(1). Furthermore, any violation of the FMLA—or one of its implementing regulations—constitutes such unlawful interference. 29 C.F.R. § 825.220(b). For example, an employer's refusal to authorize an employee's FMLA leave would constitute unlawful interference with the exercise of her FMLA rights. *Id.* An employer may neither use an employee's "taking of FMLA leave as a negative factor in [an] employment action[ ]" against her nor count her FMLA leave under its "no fault" attendance policies. 29 C.F.R. § 825.220(c).

### 1. FMLA Interference Claims

#### a. Late–July and Early–August Absences in 1997

■ Plaintiff alleges that defendants violated her FMLA rights by denying her FMLA-qualifying, pregnancy-related leave in late July and early August of 1997. Plaintiff testified she was absent from work July 25, 26, and 28, 1997 ("July absences"), due to abdominal pain and nausea; she was not scheduled to work on July 27, 1997. Plaintiff called in these July absences as being due to personal reasons rather than due to illness. When she returned to work on July 29th, she received a single three-day suspension—from July 30th through August 1st—due to her July absences. On July 31st, while serving this three-day suspension, plaintiff had diagnostic surgery, and learned that she was pregnant. According to plaintiff's testimony, on this date, Dr. Pippin, her treating physician, gave her a note that recommended that she take two weeks off from work to recover from the surgery. Plaintiff was absent on August 2nd and 4th; she was not scheduled to work on August 3rd. Plaintiff called in these August absences as also being due to personal reasons rather than due to illness. Based upon these absences, when she returned to work on August 5th, she received another three-day suspension from August 6th through the 8th.

Plaintiff contends that she was entitled to FMLA leave July 25th, 26th, and 28th due to pregnancy-related, incapacitating pain, and August 2nd and 4th due to her recuperation from her pregnancy-related surgery on July 31st. Plaintiff claims that she gave defendants sufficient, substantive notice that these absences were FMLA-qualifying when, on August 5th, she personally informed defendant Glass that she had been absent due to pregnancy-related medical problems and surgery, provided Glass with the medical note recommending a two-week leave of absence to recuperate from the July 31st surgery, and requested FMLA leave. Plaintiff also contends that she gave defendants timely notice in that she gave it "as soon as [was] practicable

under the facts and circumstances of the particular case."

In contrast, defendants challenge plaintiff's FMLA claim stemming from her July and August absences on the sole ground that she failed to provide timely notice that these absences were FMLA-qualifying.[2] According to defendants, they first learned of plaintiff's pregnancy, the FMLA-qualifying serious health condition underlying plaintiff's July and August absences, when plaintiff, on October 14, 1997, requested pregnancy-related FMLA leave from defendant Glass and received an FMLA packet from her.[3] Defendants do not dispute that plaintiff's request for FMLA leave would have been timely had it occurred on August 5th.[4] However, defendants maintain that, even taking the facts in the light most favorable to plaintiff, she cannot plausibly demonstrate that she requested such FMLA-qualifying pregnancy-related leave on August 5th so as to create a "genuine" issue of material fact. In particular, defendants argue that several undisputed facts render plaintiff's testimony—plaintiff's only proffered evidence corroborating her alleged August 5th leave request—implausible.

Defendants underscore that defendant Glass testified that plaintiff never informed her that plaintiff was pregnant or requested FMLA leave before October 14, 1997. Yet, plaintiff argues that such unsubstantiated testimony is suspect. Plaintiff points out that defendant Glass is not a disinterested party in this matter but, rather, would be at risk for both civil liability as well as employment discipline, such as termination, had she improperly denied plaintiff's alleged request for FMLA leave on August 5th. Defendants argue that Russell Stover's policy required defendant Glass to issue FMLA packets to all employees who requested such leave, regardless of the circumstances underlying those requests, and to maintain copies of the FMLA packets that she issued in the employees' personnel files. As defendants note, plaintiff's personnel file does not contain a copy of any unprocessed or unapproved FMLA packet so as to indicate that she ever requested FMLA leave on August 5th. However, plaintiff correctly contends that the bare existence of company policy requiring defendant Glass to handle employee requests for FMLA leave in a certain manner does not establish that defendant Glass, in fact, complied with that procedure regarding plaintiff's alleged August 5th FMLA request.

Defendants assert that plaintiff's request and receipt of a FMLA packet from defendant Glass due to her pregnancy on October 14th render it implausible that plaintiff had, in fact, requested a FMLA packet due to her pregnancy on August 5th and that defendant Glass had wrongly

---

2. Defendants contest neither that they were an "employer" nor that plaintiff was an "eligible employee" within the meaning of the FMLA at all relevant times. Defendants also do not dispute that pregnancy is an FMLA-qualifying "serious health condition" or that plaintiff was, in fact, pregnant.

3. The parties do not dispute that, following this request and plaintiff's submission of the requisite medical documentation, Russell Stover granted plaintiff, under the FMLA, pregnancy-related block leave—from October 14–19, 1997—and intermittent leave.

4. Russell Stover granted greater protection regarding the timeliness of the requisite notice than the FMLA itself provides. For example, while the FMLA usually requires notice for unforeseeable leave within one or two working days, the record reflects that, in 1997, Russell Stover did not strictly enforce this requirement, but, rather, granted FMLA leave to employees giving the requisite notice within a week of returning to work.

denied her such a packet. In other words, defendants contend that, because plaintiff would not have requested an FMLA packet from defendant Glass on October 14th if defendant Glass had wrongfully denied plaintiff an FMLA packet on August 5th, and because plaintiff, in fact, requested an FMLA packet from defendant Glass on October 14th, then plaintiff had not requested and been denied such a packet on August 5th. We disagree. It would not be unreasonable to find that plaintiff would have requested an FMLA packet from defendant Glass on October 14th even if defendant Glass had wrongfully denied her such a packet on August 5th. Rather, perseverance alone would account for the subsequent request. Similarly, we note that defendant Glass' proper handling of plaintiff's October 14th FMLA request does little to negate plaintiff's contention that defendant Glass improperly handled plaintiff's August 5th FMLA request; it would be reasonable to conclude that defendant Glass, in properly handling plaintiff's October 14th request, simply learned from her alleged improper handling of plaintiff's purported August 5th request.

Defendants assert that plaintiff's recollections about her notice to Glass on August 5th are inconsistent and, thus, implausible. In her affidavit, plaintiff asserted that, in early August, 1997, she requested FMLA leave from defendant Glass both for her July and August absences, but that defendant Glass informed her that her request for her July absences was too late and that her illness during her August absences was not an FMLA-qualifying serious health condition. Yet, defendants claim that plaintiff, in her deposition, inconsistently testified that Glass had informed her only that her pregnancy was

not a "serious health condition" under the FMLA. However, plaintiff's deposition testimony upon which defendants rely is not, on its face, inconsistent with plaintiff's affidavit. The record reveals only the following portion of plaintiff's deposition testimony upon which defendants rely:

A. I told her both, yes.

Q. And she told you that wasn't a serious health condition?

A. Yes.

Because defendants have failed to include in the record that portion of plaintiff's deposition testimony leading up to this colloquy, we do not know the context in which plaintiff made these statements. Thus, construing it in the light most favorable to plaintiff, this deposition excerpt only supports the inference that plaintiff was referencing defendant Glass' statement to plaintiff on August 5th that the illness underlying her *August absences* was not an FMLA-qualifying serious health condition. Indeed, plaintiff's testimony that she "told her both" would be consistent with plaintiff's testimony regarding her August absences, elsewhere in her deposition, where she says that she informed defendant Glass, both that she had had surgery and that the surgery was due to her pregnancy.[5] Plaintiff also testified that, when, on August 5th, she requested FMLA leave for her July and August absences, defendant Glass informed her, first, that her request was too late and, second, that her pregnancy-related surgery was not a serious health condition; this deposition testimony is consistent with plaintiff's affidavit.

Defendants underscore that plaintiff, in response to defendants' summary judgment motion, conceded that she had not

---

5. Likewise, the deposition testimony upon which defendants rely does not support their characterization of that testimony as referring to plaintiff's pregnancy, rather than her pregnancy-related surgery.

informed Russell Stover "that she was ill, sick, or pregnant on any of her call-ins for absences or tardies at any time from July 30, 1997[,] until her call-in on October 14, 1997," but, rather, that she had reported the reason for these call-ins as "personal." Plaintiff does not dispute that she reported those absences, via the call-in system, as due to personal reasons. This admission does nothing to contest plaintiff's claims, per her affidavit and throughout her deposition testimony, that she *personally* requested FMLA leave from defendant Glass on August 5th.[6]

On a related note, defendants point out that plaintiff called in her July and August absences as being "personal," but yet called in her pregnancy-related absences from October 14th through the 19th—absences for which plaintiff requested and received FMLA leave—as being due to illness. Defendants also note that plaintiff admitted that she misled Russell Stover by reporting absences, via the call-in system, as being "personal" when she was, in fact, ill but believed that her illness was personal.[7] In other words, defendants argue that plaintiff was aware of the difference between a "personal" and a "due to illness" absence.

However, plaintiff explained that she never requested FMLA leave for her July absences at the time of those absences because she first learned that she was pregnant on July 30th. Thus, she would have had no reason to call in her July absences as being due to illness; i.e. her pregnancy. Moreover, as plaintiff testified, before she learned that she was pregnant, she did not believe that the "female problems" underlying her July absences were the company's concern. Plaintiff testified that, while she knew that she was pregnant at the time that she called in her August absences, she reported those absences as being "personal" because she

---

**6.** In granting defendants summary judgment on plaintiff's FMLA interference claim grounded in her July and August absences, the district court erroneously construed this statement as an admission by plaintiff that she had never informed defendants that these absences were due to pregnancy-related ill-ness. The court rejected plaintiff's affidavit to the extent that its averments contradicted this admission. Per this concession, the district court concluded that, even if she had requested FMLA leave, plaintiff failed to report her July and August absences as being due to illness even though she was aware of Russell Stover's FMLA procedures.

First, to the extent that the district court implied that Russell Stover required its employees to provide the requisite notice that any of their absences were FMLA-qualifying via the mandatory call-in system, the record does not support that claim. Furthermore, plaintiff's failure to request FMLA leave via the call-in system, even if such a failure were in violation of Russell Stover's internal FMLA procedures, would not have permitted Russell Stover to disallow or delay plaintiff's taking of FMLA leave if plaintiff were to have given

"timely verbal or other notice." 29 C.F.R. § 825.302(d) (addressing the notice an employee must give to an employer where the need for FMLA leave is foreseeable); *see also* 29 C.F.R. § 825.303(b) (permitting an employee to provide notice of the need for unforeseeable leave either in person or by electronic means).

**7.** Pursuant to Russell Stover's internal procedures, if an employee were to call-in sick for three consecutive days, she would be required to submit a doctor's note certifying her as fit to return to work before she would be able to resume work. Thus, an employee who is absent for three consecutive days due to illness may have an incentive to call in those absences as "personal" so as to avoid this fitness-certification requirement, depending upon whether she intended to seek FMLA coverage for such absences. Indeed, plaintiff testified that she sometimes called in absences that were due to illness as "personal" so as to avoid this certification requirement; yet, plaintiff also testified that she would have had no reason not to call in such absences as being due to illness if she were to seek FMLA coverage for them.

believed that her pregnancy-related illness was her "personal business." Plaintiff testified that she did not want to disclose her pregnancy-related illness via the call-in system until she was certain that she would not lose the baby. Plaintiff offers additional arguments as to why she acted as she did. We do not need to address them in any detail because even if plaintiff, by virtue of calling in her absences on August 2nd and 4th as being "personal," never intended to request FMLA leave for those absences at the time of those call-ins, it would not have precluded her from changing her mind about requesting such leave after those call-ins and, thus, personally requesting such leave from defendant Glass on August 5th after her pregnancy was confirmed.

Defendants also point out that, even though plaintiff, pursuant to the collective bargaining agreement, met with her shift supervisor and a union representative on August 5th regarding her August 6th—8th suspension, she never filed a union grievance challenging (1) defendant Glass' alleged refusal of plaintiff's FMLA request, (2) the assessment of attendance occurrences for her July and August absences, or (3) her suspensions based upon these occurrences. This failure to file a grievance could arguably support defendants' position that plaintiff never requested such a leave from defendant Glass. To buttress this argument, defendants point out that plaintiff was familiar with her rights under both the FMLA and union grievance procedures. Indeed, plaintiff, in the years preceding 1997, had filed multiple FMLA requests with Russell Stover, as well as grievances contesting attendance classifications and its denial of a particular FMLA leave request. Plaintiff admitted that she believed that defendants wrongfully denied her FMLA leave, and that she knew that she had been granted FMLA leave for conditions less serious than her

July 31, pregnancy-related surgery. Moreover, plaintiff testified that the grievance process, per the collective bargaining agreement, was "not a very complicated process." Rather, it only required her to inform Barbara Glass—her shift supervisor—and her union steward of the basis for her grievance, and to sign any paperwork that the union steward filled out for her.

Plaintiff counters this argument by testifying that the decision of whether to file a grievance on behalf of an employee was within the union's prerogative. While plaintiff testified that she informed neither Barbara Glass nor her union steward that she "wanted to file a grievance," she also testified that she asked her union steward whether she should file a grievance based upon the reasons for her absences. Plaintiff testified that, because her union steward had not given her enough reinforcement that those reasons would be sufficient to sustain a grievance, she did not "see any use" in filing a grievance. Plaintiff further testified that, because her previous union grievance contesting a prior denial of FMLA failed, she did not "stand up for ... [her] rights" when defendant Glass refused to give her a FMLA packet on August 5th for her pregnancy.

Lastly, defendants implicitly argue that because plaintiff lacks the requisite medical certification to sustain her August absences as FMLA-qualifying, it is implausible that plaintiff requested FMLA leave for those absences on August 5th. In support, defendants note that a certification from Dr. Klein, plaintiff's obstetrician/gynecologist, dated October 30, 1997, indicates that plaintiff had same-day surgery on July 31st and that this surgery only required a leave of absence for the day of the surgery. Yet, plaintiff argues that this certification is questionable given

that it also indicates that Dr. Klein first saw plaintiff on August 22nd—almost one month after her surgery. Defendants also point out that, even though plaintiff claimed that Dr. Pippin, her treating physician, had given her a note on July 31st that recommended that she take a two-week leave of absence to recuperate from the surgery, she has been unable to produce this note. However, plaintiff maintains that she gave Dr. Pippin's note to defendant Glass when she requested FMLA leave on August 5th and, thus, that the note is no longer in her possession for her to be able to produce it. In any event, the heart of plaintiff's claim is that, even though she reasonably apprised defendant Glass that her absences were FMLA-qualifying on August 5th, defendant Glass, by virtue of refusing to give plaintiff a FMLA packet, never requested or required plaintiff to provide such medical certification in the first instance. Thus, according to plaintiff, defendants are foreclosed from relying upon the absence of any corroborating medical certification. Defendants also underscore that, despite Dr. Pippin's alleged recommendation that plaintiff take two-weeks off of work to recuperate from her July 31st surgery, plaintiff returned to work on August 5th, within that prescribed leave of absence. Plaintiff testified, however, that she returned to work on August 5th because she feared that, otherwise, Russell Stover would terminate her.

In determining whether an issue of material fact is "genuine" for purposes of surviving summary judgment, we are not at liberty "to weigh the evidence and [to] determine the truth of the matter." *Anderson*, 477 U.S. at 249. Rather, our function is restricted to determining whether the evidence, as reasonably construed in the light most favorable to the non-moving party, *Matsushita*, 475 U.S.

at 587, would afford an adequate basis upon which a reasonable jury could return a verdict for that party, *id.* Here, drawing all justifiable inferences from the evidence and reasonably resolving any credibility determinations in plaintiff's favor, a reasonable jury could find that, on August 5, 1997, plaintiff gave defendant Glass the requisite notice that her July and August absences were FMLA-qualifying and, thus, that defendants violated plaintiff's substantive FMLA rights by denying her such protected leave. Therefore, we REVERSE the district court's grant of summary judgment to defendants Russell Stover and Glass on plaintiff's FMLA interference claim surrounding her July and August absences.

Summary judgment on plaintiff's FMLA retaliation claim insofar as it relies on July–August absences must also be reversed and await resolution of the facts relating to the alleged August 5th request for FMLA leave.

### b. Double Tardy on October 24, 1997

■ Plaintiff also alleges that defendants violated her substantive FMLA rights by failing to treat her early departure from work on October 24, 1997, as falling within plaintiff's FMLA pregnancy-related reduced leave schedule. We reject this argument.

On Thursday, October 23, 1997, Russell Stover approved plaintiff's request for intermittent FMLA leave, which included a physician-recommended restriction limiting plaintiff's work to 8 hours per day/5 days a week/40 hours per week. This approved schedule was supposed to begin on Monday, October 20, 1997. The approval of this new schedule was never communicated to either plaintiff or her immediate supervisor.[8] As a result, by the

---

8. Pursuant to Russell Stover's FMLA policy, when the personnel manager approved an

time plaintiff returned to work on October 20, 1997, Russell Stover had already posted its weekly work schedule without any adjustment for the intermittent leave. Pursuant to that schedule, plaintiff was scheduled to work the entire week starting on Sunday, October 19 and ending on Saturday, October 26. Plaintiff was absent on October 19 pursuant to her FMLA block leave. She did work full-time Monday, October 20 through Thursday October 23. Therefore, plaintiff argues that she only had to work on either Friday, October 24 or Saturday, October 26 to comply with the reduced leave schedule; a reduced leave schedule of which, of course, plaintiff was completely unaware during the relevant time period.

On Friday, October 24, 1997, plaintiff worked for approximately twenty minutes, and then left work. Plaintiff explained this twenty-minute appearance by testifying that she knew that another attendance-related suspension would have triggered her termination, but mistakenly believed that she could afford to receive a double tardy without incurring another suspension. Accordingly, she clocked in to work so as to incur double tardy occurrence, rather than an absence occurrence, because the latter would have triggered another suspension. Plaintiff testified that she left work early, not because of her pregnancy, but because her daughter was suffering from a fever and an inner ear infection. The district court erroneously granted summary judgment to defendants based upon this admission. If the reduced leave schedule was fully effective on October 24, 1997, then plaintiff's absence from work need not have been pregnancy-related. The schedule allowed her to work

only five days, forty hours, even if there were no pregnancy-related problems. *See, e.g.,* 29 C.F.R. § 825.114(e) (noting that an absence for pregnancy-related incapacity qualifies for FMLA leave "even though the employee ... does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days.")

Plaintiff worked a full day on Saturday, October 25. Defendants assessed plaintiff a double tardy for her early departure from work on October 24. These two tardy occurrences contributed to plaintiff's eighth tardy occurrence within the relevant six-month period and, thus, triggered another three-day suspension from October 27 through October 29. Because it was plaintiff's third such attendance-related suspension within the relevant six-month period, Russell Stover terminated plaintiff pursuant to Work Rule 1.7 on October 30, 1997.

The Regulations, in pertinent part, provide:

> In the case of intermittent leave or leave on a reduced leave schedule which is medically necessary, an employee shall advise the employer, upon request, of the reasons why the intermittent/reduced leave schedule is necessary and of the schedule for treatment, if applicable. The employee and employer shall attempt to work out a schedule which meets the employee's needs without unduly disrupting the employer's operations, subject to the approval of the health care provider.

29 C.F.R. § 825.302(f). In the instant case, plaintiff applied for a reduced leave

---

employee's FMLA reduced leave schedule, the following procedures were to be taken: 1) the personnel manager was to notify the personnel clerk of the approval of that leave; 2) the personnel clerk was to notify both the employee and the employee's shift supervisor of the approval; 3) the personnel manager, the plant manager, and the employee's shift supervisor was to notify the employee of that specific reduced leave schedule.

schedule. The employer, Russell Stover, granted her request. However, since neither she nor her supervisor were notified of the approval, we are presented with the unique situation of an employee during a post-approval but a pre-notification period. It is clear that plaintiff had no knowledge of the granting of a reduced leave schedule at the time of her early departure on October 24. Rather, she seeks to benefit from it post facto. We find that she may not do so.

In the absence of extraordinary circumstances, an employee has a positive duty to wait until she is notified that her request for reduced leave had been granted. Such extraordinary circumstances do not exist here, where working on October 24 would not have violated plaintiff's medicational restrictions.[9] The regulations impose an obligation on the employer and employee to work out the details of implementing the reduced leave schedule. The employer's internal approval process for a reduced leave schedule is, a priori, part of an "attempt to work out a schedule." The lack of evidence in the record to suggest that plaintiff could not work on October 24, and her unilateral decision to take that day off prior to being notified that her reduced schedule had been approved, render her ineligible for FMLA protection. We, therefore, AFFIRM the district court's grant of summary judgment to defendants Russell Stover and Glass on plaintiff's FMLA interference claim involving her

early departure from work on October 24, 1997. To the extent that the summary judgment on the FMLA retaliation claim depends on the October 24th double tardy, it is affirmed.

■ Plaintiff contends that defendants unlawfully retaliated against her for her having exercised her FMLA-protected right to confidentiality by giving the requisite notice that her July and August absences were FMLA-qualifying to defendant Glass directly rather than via Russell Stover's call-in system, to which several authorized employees had access. However, even assuming that plaintiff can demonstrate that she exercised a right that the FMLA affords,[10] plaintiff, as a matter of law, has failed to demonstrate, for purposes of her prima facie case, a sufficient causal connection between her alleged protected activity and the adverse employment actions that defendants took against her. To substantiate this causal connection, plaintiff asserts that Russell Stover required its employees to request FMLA leave through its call-in system, and, thus, that its mandatory call-in policy, in turn, required employees to disclose, during the call-ins for their absences, confidential information regarding any FMLA-qualifying health conditions underlying those absences. As evidence of this purported requirement, plaintiff points to defendants' attempt to refute plaintiff's interference and retaliation claims involving her July and August absences with evidence that

9. Had working on October 24 violated plaintiff's medical restrictions, this would be a different case. Where an employer fails to timely notify an employee that FMLA leave has been approved, an employee is arguably not required to work in violation of her medical restrictions while awaiting such notification to preserve her right to protection under the FMLA. Since such a case is not before us, we express no opinion on the merits of such an argument.

10. Plaintiff relies upon 29 C.F.R. § 825.500(g), which requires employers to maintain employees' FMLA-related medical documents as confidential and in files separate from their personnel files, as the source of a FMLA right to confidentiality in the notice process. We need not and do not express any opinion on this issue because we find that plaintiff's unlawful retaliation claim grounded upon such a right, even assuming it were to exist, must, nevertheless, fail.

she had called in those absences as "personal." However, as discussed above, defendants relied upon this evidence only to impugn plaintiff's claim that she had, in fact, directly given defendant Glass notice that such absences were FMLA-qualifying on August 5th. Indeed, defendants concede that they would have recognized plaintiff's July and August absences as FMLA-qualifying if she were to have given such notice to defendant Glass. In any event, plaintiff's own testimony belies the existence of any requirement that employees call in the requisite FMLA notice.[11] As plaintiff herself admitted, while Russell Stover's internal leave procedures permitted employees to give the requisite notice that their absences were FMLA-qualifying through the call-in system, it also permitted them to give such notice directly to defendant Glass. Thus, as plaintiff further conceded, Russell Stover's call-in policy did not require employees to report the specific details of any illnesses underlying their absences. In a last-ditch effort to establish the requisite causation, plaintiff points to defendants' concession that they would have approved her July and August absences if plaintiff had given notice that those absences were FMLA-qualifying during her call-ins for them. Yet, such a concession cannot reasonably give rise to the inference that defendants would have approved those absences *only if* plaintiff had used the call-in system to give the requisite notice, especially in light of plaintiff's own testimony.

In short, even though there is a genuine issue of fact as to whether plaintiff, on August 5th, directly gave notice to defendant Glass that her July and August absences were FMLA-qualifying, such an issue is not material to plaintiff's retaliation claim grounded in her purported FMLA right to confidentiality. Rather, even drawing all justifiable inferences from the evidence in plaintiff's favor, no reasonable jury could find that plaintiff has established, for purposes of her *prima facie* case, that defendants refused to recognize her July and August absences as FMLA-qualifying and, thus, suspended and terminated her on account of them *because* she had given the requisite FMLA notice to defendant Glass rather than via the call-in system. This issue of fact could reasonably demonstrate, at most, that defendants failed to approve plaintiff's July and August absences *despite* plaintiff having given the requisite notice to defendant Glass on August 5th. Therefore, we AFFIRM the district court's grant of summary judgment to defendants Russell Stover and Glass on plaintiff's FMLA retaliation claim involving her alleged FMLA right to confidentiality in the notice context.

### 2. PDA claim

Title VII provides, "It shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act ("PDA") amended Title VII to include, within the definition of discrimination based upon sex under Title VII, discrimination based upon pregnancy. 42 U.S.C. § 2000e(k). Summary judgment on that claim must also be reversed since the judgment is based on dismissal of the FMLA claim.

---

11. Thus, to the extent that plaintiff contends that defendants unlawfully interfered with her alleged FMLA right to confidentiality in the notice context by *requiring* her to provide the necessary notice that her July and August absences were FMLA-qualifying via Russell Stover's call-in system, such a claim, likewise, fails based upon plaintiff's own testimony.

### 3. THRA claim

Plaintiff also claims that defendants violated the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. § 4–21–408,[12] when they refused to include her October 24th early departure from work within her protected reduced leave schedule. The district court dismissed plaintiff's THRA claim for lack of jurisdiction once it dismissed with prejudice all of plaintiff's federal claims. Because we have reinstated some of plaintiff's federal claims, we REVERSE the district court's dismissal of plaintiff's THRA claim for lack of jurisdiction and REMAND to the district court the issue of whether to exercise, in its discretion, supplemental jurisdiction over that pendent state-law claim when the FMLA claim has been tried. *See Cornist v. B.J.T. Auto Sales, Inc.,* 272 F.3d 322, 332 (6th Cir.2001) (declining to address the merits of the plaintiff's state-law claims in such a situation, but, rather, remanding to the district court the issue of whether to exercise supplemental jurisdiction over those claims).

### 4. Partial Summary Judgment Motion

Plaintiff filed a motion for partial summary judgment against defendants on her FMLA claims of unlawful interference and retaliation involving defendants' failure to include plaintiff's October 24th absence within her pregnancy-related reduced leave schedule as well as on her THRA claim involving this alleged failure. The district court denied plaintiff's motion for summary judgment as to her FMLA claims. We affirm. As our discussion of the factual issues and legal standards

make clear, plaintiff is not entitled to summary judgment.

The district court did not deny plaintiff's motion for partial summary judgment as to her THRA claim on the merits because it, as discussed above, dismissed that pendent state-law claim for lack of jurisdiction upon dismissing plaintiff's federal claims. Should the district court, on remand, choose to exercise supplemental jurisdiction over plaintiff's THRA claim, we likewise REMAND plaintiff's motion for partial summary judgment as to her THRA claim involving her October 24, 1997, absence.

### III. Conclusion

For the preceding reasons, we REVERSE the district court's grant of summary judgment to defendants Russell Stover and Glass on plaintiff's FMLA claims of unlawful interference and retaliation as well as its grant of summary judgment to defendant Russell Stover on plaintiff's Title VII/PDA claim of unlawful pregnancy discrimination only to the extent that those claims surround plaintiff's absences in late July and early August of 1997. We AFFIRM the district court's grant of summary judgment to defendants Russell Stover and Glass on plaintiff's FMLA claims of unlawful interference and retaliation involving either her absence on October 24, 1997, or her alleged right to medical confidentiality in the notice context. Likewise, we AFFIRM the district court's denial of plaintiff's motion for partial summary judgment against defendants Russell Stover and Glass on her FMLA claims surrounding her October 24, 1997, absence. We REVERSE the district court's dis-

---

12. *Section 4–21–408(a) of the THRA provides:* A female employee who has been employed by the same employer for at least twelve (12) consecutive months as a full-time employee, as determined by the employer at the job site or location, may be absent from such employment for a period not to exceed four (4) months for pregnancy, childbirth and nursing the infant, where applicable.

missal of plaintiff's THRA claim for lack of jurisdiction and REMAND to the district court the issue of whether to exercise, in its discretion, supplemental jurisdiction over that pendent state-law claim. Lastly, we REMAND plaintiff's motion for partial summary judgment as to her THRA claim involving her October 24, 1997, absence, should the district court, on remand, choose to exercise supplemental jurisdiction over that claim.