**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0342n.06

Case No. 14-1950

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 08, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT FESTERMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COUNTY OF WAYNE | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | OPINION |

BEFORE: KETHLEDGE and DONALD, Circuit Judges; McCALLA, District Judge.*

**JON P. McCALLA, District Judge.** Plaintiff-Appellant Robert Festerman filed an action against his former employer Defendant-Appellee Wayne County, alleging interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. The district court granted summary judgment in favor of Wayne County, which Festerman now appeals. For the reasons discussed below, this Court REVERSES the district court's grant of summary judgment and REMANDS the case for trial.

---

*The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

## I. BACKGROUND

### A. Factual Background

From October 2007 to June 2012, Robert Festerman worked as a "Police Officer" in Wayne County's Jail Division Two. As a police officer, Festerman provided inmate security in one of three Wayne County jail facilities. The jail facilities house convicted felons and misdemeanants, as well as various detainees. Each facility also has a maximum security area for violent and mentally ill inmates. The facility in which Festerman worked is run by the Wayne County Sheriff's Office.

Due to understaffing, involuntary overtime was a common occurrence, and deputies like Festerman did not have the right to refuse overtime assignments. If an officer refused a mandatory overtime assignment or failed to report for such assignment, that officer's supervisor would issue a Conduct Incident Report ("CIR"), documenting the officer's refusal to follow a direct order. It was common practice to refer an officer who received a CIR for administrative review.

On March 3, 2012, at around 4:00 p.m. while at work, Festerman experienced chest pains and shortness of breath. After notifying Sergeant Becky Tripp of his condition, Festerman was transported to Detroit Receiving Hospital. Sergeant Tripp filed an incident report regarding the episode on the same day.

Festerman returned to work on March 8, 2012 and submitted an injury report documenting the March 3rd incident. Notice of receipt of Festerman's injury report was sent to Festerman on March 8, 2012 by Suzanne K. Hall, Director of Administration. Shirley Prieskorn, Disability Manager was copied on the notice of receipt, which indicated that the Sheriff's

Personnel Office had received the injury report and had forwarded it to the Benefits Administration.

On March 9, 2012, Festerman's physician, Dr. Pavani Kolli, provided Festerman a written note, which read, "Patient is advised to limit working hours to 8 hrs/day." Festerman alleges that he gave Dr. Kolli's note to Sergeant Jackie Loving on March 12, 2012. Around this time, Dr. Kolli also prescribed Festerman medicine for treating anxiety disorder.

The parties agree that Wayne County accommodated Festerman's limited working hours for a period of time after the March 3rd incident. On March 28, 2012, Commander Scott Gatti was notified that Festerman and three other officers had informally been given medical accommodations, which excused them from overtime work. At that time, the Sheriff's Personnel Office made the determination that officers with doctor's notes that limited their working hours would be assigned overtime shifts, just as any other officer on duty, and would be issued CIRs if they refused to work a mandatory overtime shift. This policy was announced during roll call on March 29, 2012.

On April 6, 2012, Sergeant Dwight Reed issued Festerman a CIR for refusing overtime work. On April 8, 2012, Sergeant Loving issued Festerman a CIR for a similar refusal. On April 9, 2012, Festerman met with Debra Blair, Director of Labor Relations, and Shirley Prieskorn, Disabilities Manager – both employees in the Human Resources Department. Blair and Prieskorn advised Festerman to complete a leave of absence form in order to be approved for intermittent leave under the FMLA. Festerman alleges that he inquired into whether the doctor's note he previously provided to Sergeant Loving had provided adequate notice of Festerman's medical needs. Festerman asserts that Prieskorn indicated that the note satisfied the notice requirement. On April 12, 2012, Festerman once more discussed FMLA leave with Prieskorn

and Mary Sullivan, Leave Coordinator. Festerman received a leave of absence packet on April 13, 2012, which included the leave of absence form that Festerman had been asked to complete. On May 3, 2012, Festerman submitted a completed leave of absence form to Wayne County.

On May 7, 2012, Festerman received a departmental recommendation for intermittent sick leave under the FMLA, which was subject to final approval by Central Personnel. Mary Sullivan requested further clarification regarding the 6-8 hour workday shifts prescribed by Dr. Kolli, and whether Festerman was able to continue to work full time. Festerman resigned before Sullivan received a response from Dr. Kolli.

Throughout this period, Wayne County took further action related to Festerman's March 3rd medical incident and his subsequent request for intermittent leave. On April 10, 2012, Commander Scott Gatti recommended that Festerman be referred for administrative review regarding his failure to follow a direct order as documented by the two CIRs issued to Festerman. On April 26, 2012, Wayne County modified the job description for Festerman's position. The minimum number of hours required for a workweek was increased from 40 hours to 40.5 hours. Additionally, mandatory overtime was included as an essential function of the position.

Festerman alleges a discriminatory incident occurred with a coworker on April 10, 2012. Officer Darryl Thornton arrived at work that day wearing a t-shirt that read, "I refuse – I have a note from my mom." Festerman did not see the t-shirt himself because he was on leave that day, but was informed of the t-shirt and its content by a coworker. Festerman, along with other coworkers who had medical restrictions, met with Sergeant Loving and two union stewards to discuss what they believed was discriminatory conduct. Subsequently, Wayne County commenced an investigation into the incident. On June 11, 2012, Festerman submitted a

complaint in the form of a written memorandum to Wayne County Sheriff Benny Napoleon, which stated that Festerman felt he was harassed during the investigation. As previously noted, Festerman tendered his resignation on June 20, 2012.

## B. Procedural Background

Festerman filed a complaint on April 25, 2013, seeking (1) damages and injunctive relief for interference with his rights under the FMLA and (2) damages for retaliation pursuant to 29 U.S.C. § 2615. Wayne County filed a motion for summary judgment on March 28, 2014, which the district court granted on June 24, 2014. Festerman now appeals the district court's order granting Wayne County's motion for summary judgment.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Donald v. Sybra, Inc.*, 667 F.3d 757, 760 (6th Cir. 2012). Summary judgment is granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the disputed issue of fact is material to liability, [] premature entry of summary judgment inappropriately supplants the role of the fact-finder in adjudicating liability." *Wallner v. Hilliard*, 590 F. App'x 546, 550 (6th Cir. 2014). "The court must draw all reasonable inferences in favor of the nonmoving party." *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). Summary judgment on a particular claim is inappropriate where sufficient evidence exists on the record such that a reasonable jury could find for the non-movant. *See Donald*, 667 F.3d at 760-61.

## III. FMLA VIOLATIONS

Under the FMLA, an employee who has worked full time for an employer for twelve months or longer may be entitled to up to twelve weeks of leave within a subsequent twelve-

month period. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 420-21 (6th Cir. 2004); 29 U.S.C. § 2611(2). To receive FMLA leave, the employee must be subject to a qualifying condition, such as "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." § 2611(11). An employee with a serious health condition may take intermittent leave or establish a reduced work schedule under the FMLA without fear of adverse employment actions taken by the employer as a result. *George v. Russell Stover Candies, Inc.*, 106 F. App'x 946, 949-50 (6th Cir. 2004). "Intermittent leave is leave taken in separate blocks of time for a single qualifying reason." *Adams v. Honda of Am. Mfg., Inc.*, 111 F. App'x 353, 355 (6th Cir. 2004) (citing 29 C.F.R. § 825.203(a)).

"This court recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Because Festerman asserts claims under both theories, this Court will address each in turn.

## A. Interference Claim

It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]." 29 U.S.C. § 2615(a)(1). For example, unlawful interference occurs when an employer refuses to authorize leave for a qualified employee, when an employer considers the taking of FMLA leave as a negative factor in an employment action, and when an employer counts FMLA leave under a no-fault attendance

policy. *George*, 106 F. App'x at 950 (citing 29 C.F.R. § 825.220). To succeed on a claim for

FMLA interference, an employee must show:

> (1) [the employee] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald*, 667 F.3d at 761 (internal quotation marks and citations omitted).

The district court found that Festerman provided sufficient evidence to establish a

genuine issue of material fact as to the first three elements of his interference claim. The district

court then determined that Festerman's interference claim failed as a matter of law based on a

lack of evidence of the fourth element – whether Festerman provided sufficient notice to Wayne

County of a serious condition qualifying him for intermittent FMLA leave prior to Festerman's

April 9, 2012 discussion with the Wayne County Sheriff's Office Human Resources Department.

The district court explained that Festerman's interference claim must fail if notice is based on the

April 9th discussion, because Wayne County notified Festerman of his FMLA leave eligibility

within five business days of the discussion in compliance with 29 C.F.R. § 825.300(b)(1). The

district court further explained that Festerman's interference claim also fails if it is based on

Festerman's May 3, 2012 written request for intermittent leave, because Festerman received

notice that his request for intermittent FMLA leave was approved on May 7, 2012, subject to

final approval by Central Personnel.

This Court agrees with the district court that the undisputed evidence confirms that

Wayne County provided oral notice of FMLA eligibility to Festerman during the April 9th

discussion and written notice of eligibility in the leave packet provided to Festerman on April 13,

2012. Furthermore, the memorandum regarding approval of Festerman's intermittent leave

dated May 7, 2012 also provided sufficient content to notify Festerman of his eligibility. The undisputed evidence further establishes that Wayne County did not require Festerman to work overtime or issue CIRs to Festerman for refusing overtime work subsequent to the April 9th discussion. Consequently, Festerman's interference claim hinges in part on whether submittal of his doctor's note to Festerman's superiors on March 12, 2012 satisfied the notice requirement under 29 C.F.R. § 825.303(b).

## 1. Notice of Serious Health Condition

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (alteration in original) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)). Whether an employee has submitted adequate notice to an employer of the employee's intent to take leave under the FMLA "is an intensely factual determination . . . ." *Donald*, 667 F.3d at 761. "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). The standard, as established by this Court, is whether the employee has given the employer "enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Wallace*, 764 F.3d at 586 (alteration in original) (internal quotation marks and citations omitted). Section 825.303(b) makes it clear that merely "calling in 'sick'" is insufficient to trigger any obligation of the employer under the FMLA. *See also Brenneman*, 366 F.3d at 423 (finding that an employee calling in to say that he "wasn't doing well and . . . wouldn't be in today" without indicating that the absence was due to a FMLA-qualifying condition was insufficient on its own to amount to notice under the FMLA). The employee's burden, however, is not a heavy one. *Wallace*, 764 F.3d at 586. Instead, once

the employee has met his initial burden, the onus "to obtain any additional required information" is on the employer. § 825.303(b).

In contrast to simply "calling in sick," a doctor's note conveyed to an employer can satisfy the notice requirements under the FMLA in certain circumstances. *See Brenneman*, 366 F.3d at 423. For example, a doctor's note that details the qualifying medical condition that caused an employee's absence is generally sufficient notice. *Id.* A doctor's note that fails to state with specificity the condition behind the prescribed leave or the treatment to be administered, however, is insufficient on its own to provide notice to an employer of the employee's request for FMLA leave. *See Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 993 (8th Cir. 2005). Whether a doctor's note amounts to sufficient notice depends on whether, in context, it provides "enough information for the employer to reasonably conclude" that the employee's prescribed leave is due to a FMLA-qualifying condition. *See Wallace*, 764 F.3d at 586; *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000) (finding sufficient notice under the FMLA when an employee "was absent for more than three days with notes from her physician, written on two different occasions within that period of absence, indicating that she was not to work").

In the present case, this Court is confronted with a doctor's note that expressly discloses a requirement of limiting the employee's work hours per day, but fails to disclose the condition that gives rise to this requirement or any additional prescribed treatment. Consequently, the doctor's note submitted by Festerman, in isolation, may not have provided sufficient notice to Wayne County of a qualifying condition under the FMLA. The circumstances surrounding Festerman's initial qualifying leave, however, provided additional context to the doctor's note

and are evidence that Festerman's superiors were aware of his potential FMLA-qualifying condition.

The district court, in its order granting summary judgment, recognized that other courts had found sufficient notice where "an employee submits a doctor's note in close proximity to a health-related incident in the workplace." (R. 29 at 13; PageID 651-52 (citing *Conrad v. Eaton Corporation*, 303 F. Supp. 2d 987, 998 (N.D. Iowa 2004).) The district court, in the instant case, found the circumstances surrounding Festerman's submittal of his doctor's note to provide insufficient notice, because "[Festerman's] most recent request for leave at the time of the incident was due to his school schedule." (*Id.* at 14; PageID 652.) Significantly, the district court did not include in its analysis of the notice question the following facts as stated in its summary judgment order:

> At 4:00 p.m. on March 3, 2012, Plaintiff reported to Sergeant Becky Tripp that he was experiencing "intermittent chest pain" accompanied by "shortness of breath." (Dkt. 18-2, Incident Report of Mar. 3, 2012.) Plaintiff left work to go to the emergency room and was admitted to the hospital for an overnight stay. (Dkt. 18-3, Injury Report of Mar. 3, 2012.) Upon returning to work on March 8, he submitted documentation of the incident itself and received confirmation that the Personnel Office had received it. (Dkt. 18-4, Notice of Receipt.)

(*Id.* at 3; PageID 641.) The events outlined in this passage led Festerman to seek treatment from Dr. Pavani Kolli for anxiety disorder. Dr. Kolli's treatment was documented in part in a note that Festerman allegedly submitted to his superiors on March 12, 2012. The facts set forth above are all supported by evidence submitted in the record by the parties. Given Wayne County's knowledge of a serious health-related incident that occurred in the workplace and the doctor's note which advises that Festerman's workday should be limited to eight hours per day, a reasonable jury could find that Festerman provided sufficient notice to Wayne County of a FMLA-qualifying serious health condition.

In finding that Festerman failed to provide notice of his serious health condition to Wayne County, the district court relied on a 2009 amendment of § 825.302(d), which "explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013). The district court found that Wayne County's usual notice procedures required submittal of a written leave of absence request. The district court concluded that Festerman could not have provided notice of his condition to Wayne County until at least May 3, 2012 when Festerman submitted the requisite paperwork.

The evidence submitted by the parties in this case controverts the district court's finding in several respects. First, the express language of the amended regulation states, "An employer may require an employee to comply with the employer's *usual and customary* notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d) (emphasis added). A plain reading of the amended language reveals that an employer may require compliance with the employer's ordinary custom. Nothing in the regulation, however, suggests that an employee must adhere to an official written policy to provide sufficient notice under the FMLA when a different unwritten custom is typically followed.

In *Cundiff v. Lenawee Stamping Corporation*, this Court briefly addressed the issue of whether an employee could comply with § 825.302(d) by following "an unwritten policy of allowing employees to commence FMLA leave by providing a doctor's note . . . ." 2015 WL 73524, at *2 (6th Cir. Jan. 7, 2015). The *Cundiff* panel found that the plaintiff could not avoid summary judgment on these grounds because he "offer[ed] no evidence that any such unwritten policy existed" at the time the plaintiff submitted his doctor's note to his employer. *Id.*

In contrast to the lack of evidence offered by the plaintiff in *Cundiff*, Festerman has provided evidence that prior to at least March 28, 2012, the common unwritten practice of Wayne County was to grant leave based solely on the submittal of a doctor's note. Festerman asserts that in the April 9, 2012 conversation, Disabilities Manager Shirley Prieskorn told Festerman that his doctor's note fulfilled Wayne County's notice requirement. Moreover, Festerman has produced deposition testimony by Commander Scott Gatti, which indicates that Festerman's superiors were aware of at least four employees who were informally granted intermittent leave based on doctor's notes and that those employees were not issued CIRs for declining to work overtime. The evidence proffered by Festerman is sufficient for a reasonable jury to find that Festerman complied with § 825.302(d) when he allegedly submitted his doctor's note to his superiors on March 12, 2012.

Second, the parties have agreed that, at least for a period of time after March 12, 2012, Wayne County informally accommodated Festerman's request for intermittent leave. A reasonable jury could find that Festerman complied with Wayne County's usual notice procedures if Wayne County in fact granted Festerman his requested leave in practice.

Third, Festerman has submitted evidence that the requirement of a written leave request was part of a policy change that occurred on or about March 28, 2012. The record also includes evidence that March 29, 2012 was the first time Wayne County communicated the requirement of a written request for leave to Festerman. It is difficult to comprehend how Festerman could comply with Wayne County's "usual" notice policy on March 12, 2012 if the policy did not exist at that time or was never communicated to Festerman.

Taken as a whole, sufficient evidence exists to support a conclusion that Festerman complied with Wayne County's usual notice procedures as they existed on March 12, 2012, if any existed at all.

For these reasons, Festerman has raised a genuine issue of material fact as to whether he satisfied the FMLA notice requirements on March 12, 2012.

## 2. Denied FMLA Benefit

In its summary judgment order, the district court also found that Festerman's interference claim failed for lack of evidence that Festerman was denied a benefit under the FMLA. The FMLA is not a strict-liability statute. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). Although an employer's intent is not relevant to an interference claim under the FMLA, "[e]mployees seeking relief under the entitlement [or interference] theory must [] establish that the employer's violation caused them harm." *Id.* at 507-08. Consequently, in an interference claim,

> [t]he employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Often the harm suffered by the employee relevant to his claim of unlawful interference is the employee's termination from his position. *See, e.g.*, *Arban v. W. Pub'g Corp.*, 345 F.3d 390, 401-03 (6th Cir. 2003); *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005) ("We initially note every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge during FMLA leave by no means demands an

employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights.").

In the instant case, the district court found that none of the injuries asserted by Festerman resulted in actual prejudice. This Court agrees with the district court that the mere issuance of CIRs and scheduling of an administrative review fail as a matter of law to establish harm of the kind contemplated by the FMLA. Of particular importance, however, is Festerman's assertion that he was prejudiced by the alleged hostile environment that ensued after his meeting with Human Resources on April 9, 2012. Festerman's assertion raises the novel question of whether a constructive discharge could suffice as harm resulting from an employer's interference. Wayne County argues that Festerman's interference claim fails because he voluntarily terminated his employment before Wayne County denied any benefit under the FMLA. Wayne County asserts that in fact Festerman was granted preliminary intermittent leave and was not required to work any overtime leading up to his quitting the job. Neither party cites to any case law where a constructive discharge was either rejected or accepted as grounds for finding prejudice in an interference claim.

It is axiomatic that a person who is forced to quit his job is denied the "compensation and benefits" of continued employment. Further, a constructively discharged employee is also unable to enjoy job-related benefits such as FMLA leave due to termination of the employment relationship. The employee is also likely to sustain other "monetary losses as a direct result" of the interference, such as expenses incurred in seeking new employment and increased medical costs due to loss of health insurance. The FMLA is a comprehensive remedial scheme designed to protect employees from interference with their right to FMLA qualifying leave by their employers. *See Ragsdale*, 535 U.S. at 89. The FMLA must therefore "be construed broadly to

extend coverage[,] and [the FMLA's] exclusions or exceptions should be construed narrowly." *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 559 (6th Cir. 2006). Accordingly, it would be inconsistent with the purpose of the Act to bar an employee who was forced to quit his position from seeking an interference claim on grounds that the employee's forced resignation obviated any need by the employer to provide the employee benefits to which he would otherwise be entitled. Because Festerman has provided sufficient evidence of the elements for a constructive discharge, *see infra* Part III.B, Festerman has also provided sufficient evidence to establish a genuine issue of material fact as to whether he was denied a benefit under the FMLA.

## B. Retaliation Claim

In addition to the prohibition on interfering with an employee's rightful benefits under the FMLA, employers are also prohibited from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). To establish a prima facie case for retaliation under the FMLA, an employee must show:

> (1) [the employee] was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald*, 667 F.3d at 761.

This Court applies the *McDonnell Douglas* burden shifting framework to retaliation claims that turn on circumstantial evidence. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Where a plaintiff makes a prima facie showing of retaliation, the burden shifts to the defendant to establish "a legitimate, nondiscriminatory reason for its decision . . . ." *Donald*, 667 F.3d at 761. The burden

imposed on a plaintiff to establish a prima facie case for retaliation "is not intended to be an onerous one." *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (internal quotation marks and citations omitted); *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) ("The burden of proof at the prima facie stage is minimal . . . ."). If the defendant satisfies its burden in establishing a legitimate, nondiscriminatory reason for its decision, the plaintiff's retaliation claim will overcome a summary judgment challenge only if the plaintiff can show that the there is a genuine issue of material fact as to whether defendant's "stated reasons are a pretext for unlawful discrimination." *Donald*, 667 F.3d at 761–62.

There is no dispute that Festerman satisfied the first element of the retaliation analysis. The district court's grant of summary judgment was limited to elements 2, 3, and 4. Regarding the second element, as discussed above, Festerman proffered evidence that he provided notice to Wayne County on March 12, 2012 of his request for FMLA leave sufficient to avoid summary judgment. Consequently, this Court's analysis focuses on the last two elements of the prima facie case and whether Festerman has made a successful showing under the *McDonnell Douglas* framework.

Festerman argues that he was constructively discharged from his position for seeking FMLA leave. To establish prima facie constructive discharge, "a plaintiff must adduce evidence to show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (internal alterations, quotation marks, and citations omitted). Constructive discharge analysis necessarily includes an examination of both the employer's intent and the objective feelings of

the employee. *Id.* In the instant case, it is undisputed that Festerman quit his job with Wayne County.

Regarding the first element of constructive discharge, working conditions are objectively intolerable where "a reasonable person in the plaintiff's shoes would feel compelled to resign." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1127 (6th Cir. 1998) (internal quotation marks and citations omitted). Hurt feelings and public criticism alone are insufficient to establish the existence of intolerable working conditions. *Savage*, 665 F.3d at 739 (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 479 (6th Cir. 2002)). This Circuit considers several factors in determining whether a reasonable person would feel compelled to resign a position, including:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005) (internal quotation marks and citations omitted). This list of factors is not exclusive, and the presiding court is free to consider other relevant factors as it sees fit. *See id.*

Festerman asserts that he was subjected to intolerable working conditions based in part on harassment from Wayne County's supervisory staff. In particular, Festerman alleges that Wayne County implicitly authorized the harassment of Festerman "by a coworker who wore a t-shirt mocking his medical condition," which read, "I refuse – I have a note from my mom." The district court discounted the significance of the t-shirt worn by Officer Darryl Thornton, concluding that "[a] reasonable officer, especially one accustomed to providing security for inmates at a state jail facility, would not feel compelled to resign based on a t-shirt poking fun at employees who refused mandatory overtime." (R. 29 at 21; PageID 659.) Here, however,

Festerman not only provided evidence of his own outrage at Wayne County's handling of the matter, but also tendered evidence that several of his colleagues were offended by the incident.

Moreover, Festerman's evidence showed that Sergeant Tripp's investigation into the t-shirt incident only added insult to injury. Instead of investigating whether Thornton violated jail policies by, for example, wearing the shirt while on duty, Tripp focused her efforts on the motives of those who complained. During her interview with Festerman, Tripp repeatedly asked why Festerman refused to work overtime even though she knew Festerman's leave requests were medically related. (*See* R. 16-24 at 2; Page ID 321.) Tripp also inquired as to who told Festerman about the shirt and whether Festerman had mentioned any other names in his complaint. (*See* R. 16-3 at 56; Page ID 167.) Tripp instructed Festerman not to discuss the investigation with anyone, but then dropped the investigation soon thereafter without making official recommendations or findings. (R. 16-24 at 2; Page ID 321.) Finally, Festerman later learned that Tripp had accused the officer who told Festerman about the shirt—rather than the officer who wore the shirt—of creating the problem. (*Id.*) Festerman submitted evidence that another supervisor had also referred to Festerman and the others who complained as "trouble makers." (R. 18-22 at 5; Page ID 443.) Although "hurt feelings" are not enough to show a constructive discharge, a reasonable jury could find that the combined hostility from the officers and supervisors to Festerman resulting from his leave requests and complaints of harassment contributed to objectively intolerable working conditions.

The district court also incorrectly discounted Festerman's assertion that the CIRs issued to him on April 6, 2012 and April 8, 2012 contributed to an intolerable work environment on the basis that Wayne County had not received notice at the time the CIRs were issued that Festerman sought leave under the FMLA. The district court concluded that without notice, no causal

connection between Festerman's FMLA leave request and the issuance of CIRs could be established. In addition to the argument that issuance of the CIRs created intolerable working conditions, Festerman argues that Wayne County's failure to cancel those CIRs and the related administrative review hearing after Festerman provided subsequent notice of his intent to seek FMLA leave during his April 9, 2012 discussion with Human Resources, and his submission of the relevant documentation on May 3, 2012 contributed significantly to the negative working conditions.

Because Festerman has raised a triable issue with regard to the notice provided to Wayne County on March 12, 2012, a genuine issue of material fact exists as to the causal connection between Festerman's request for FMLA leave and issuance of the CIRs. Moreover, Festerman's evidence that the CIRs and administrative review were not cancelled after the notice provided to Wayne County on April 9, 2012 and May 3, 2012 support the argument that intolerable working conditions existed at the time of his resignation on June 20, 2012.

Perhaps most significantly for Festerman's constructive discharge claim, the district court did not consider the effect that the modification of the job requirements for Festerman's position had on his working conditions. Festerman provided evidence that after he requested intermittent FMLA leave, Wayne County increased the required workweek hours from 40 hours per week to 40.5 hours per week. Further, Wayne County required mandatory overtime as part of the essential job functions. These modifications to Festerman's job description meant that Festerman could no longer fulfill the requirements of the position without contravening his doctor's advice. Moreover, Wayne County's adjustment of Festerman's job description occurred just one day after Commander Scott Gatti was notified that Festerman and three other officers had been granted informal accommodations based on doctors' notes. The modifications

appeared to closely track the time limitations placed on Festerman by his doctor and the intermittent leave Festerman sought under the FMLA. Consequently, a reasonable jury could find that Festerman was targeted in such a way as to compel him to resign his position. Furthermore, because the changes were made in close proximity to the occasions when Festerman submitted notice of his FMLA qualifying condition, a reasonable jury could find that a causal connection existed between Festerman's leave request and the changes to his job description. *See Bryson*, 498 F.3d at 571 ("We have previously held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection.").

Given the totality of the evidence submitted by Festerman, a reasonable jury could find that intolerable working conditions existed sufficient to compel a reasonable person to resign. The district court's conclusion to the contrary impermissibly intrudes on the role of the jury as finder of fact.

With regard to the intent requirement, "[i]ntent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). In the instant case, Wayne County's intent to force Festerman to quit his position can be reasonably inferred based on any number of alleged facts supported by the record, including the modifications made to Festerman's job description, Wayne County's response to the t-shirt worn by Officer Thornton and related concerns expressed by multiple officers, and Wayne County's failure to cancel Festerman's CIRs and administrative review.

Based on the evidence that exists in the record, a reasonable jury could find that Wayne County deliberately created intolerable working conditions for Festerman with the intent to force

Festerman's resignation. Accordingly, Festerman has provided sufficient evidence to establish a prima facie case of retaliation. A genuine issue of material fact also exists with regard to Wayne County's rebuttal of the prima facie retaliation. Should a jury find that Festerman's termination was tantamount to a constructive discharge, Wayne County's rebuttal to Festerman's prima facie showing of retaliation may be insufficient given that the jury would have found that Wayne County intentionally created intolerable working conditions for the purpose of forcing Festerman's resignation ostensibly in response to his request for FMLA leave.

Accordingly, a genuine issue of material fact exists as to Festerman's retaliation claim.

**IV**

For the foregoing reasons, the decision of the district court with respect to Festerman's claims for interference and retaliation is **REVERSED** and **REMANDED**.