NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0515n.06

Case No. 14-2401

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 21, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TRICIA BASCH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| KNOLL, INC., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: CLAY and SUTTON, Circuit Judges; WATSON, District Judge.[*]

SUTTON, Circuit Judge. After employing Tricia Basch for over a decade, Knoll, Inc., a furniture maker, discharged her. Basch filed this lawsuit, raising several employment-related grievances against Knoll. The district court granted Knoll's motion for summary judgment on all of Basch's claims. Basch challenges one ruling on appeal: the district court's rejection of her retaliation claim under the Family Medical Leave Act (FMLA). We affirm.

Basch held various jobs at Knoll during her time there. She took various approved leaves under the FMLA during her time there. And she was warned and disciplined for various issues, including absenteeism, aggressive behavior, and insubordination during her time there.

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

At the time of the discharge, Basch worked as a coordinator in the "paint lines" department. R. 59 at 1. Her primary duty was "kitting"—organizing paint orders into baskets to prepare them for painting. R. 40-1 at 4, 9. On November 9, 2011, she delivered a kitted basket to a co-worker, who rejected the basket because it was arranged incorrectly. The co-worker took the issue to Basch's supervisor, Kristie Walker. Raising her voice, Walker told Basch to re-kit the basket. Without re-kitting the basket, Basch walked away and attempted to call two other managers over the next several minutes while Walker repeatedly told her to re-kit the basket. Basch never did so.

Faced with Basch's continued refusal, Walker took Basch to the human resources department and asked for assistance from other managers. One manager told Basch that she needed to do what she was told. Basch, who still had not made any effort to re-kit the basket, asked to take FMLA leave due to stress (triggered by her encounter with Walker). The plant's human resources manager told Basch that she could not take leave because she was being suspended. Two days later, the company discharged Basch.

Basch filed this lawsuit, bringing nine claims under a variety of laws: the Americans with Disabilities Act, the FMLA, Title VII, and Michigan state law. The district court granted summary judgment to Knoll across the board. *Basch v. Knoll, Inc.*, No. 1:13-CV-76, 2014 WL 911865, at *1 (W.D. Mich. Mar. 10, 2014). Basch appeals only the FMLA claim. We review afresh a district court's grant of summary judgment, *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006), asking whether Knoll is entitled to judgment as a matter of law because "no genuine dispute as to any material fact" stands in the way, even after giving Basch the benefit of all reasonable inferences from the record. Fed. R. Civ. P. 56(a).

As relevant here, the FMLA says that "[i]t shall be unlawful for any employer to discharge . . . any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Basch claims she was fired for trying to take FMLA leave "[b]ecause of a serious health condition that ma[de] [her] unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). A burden-shifting test applies to such claims. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that familiar test, Basch first must make out a prima facie case of retaliation. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). If she does so, Knoll must articulate a legitimate, nondiscriminatory reason for the alleged retaliatory act. *Id.* And if the company gives such a reason, the employee must show that the employer's rationale is pretextual. *Id.*

Like the district court before us, we conclude that Basch has not met her burden in the first and last part of the analysis. She did not make out a prima facie case of retaliation, and she did not show that Knoll's rationale for discharge (insubordination) is pretextual.

*Prima facie case.* In order to make out a prima facie case of retaliation, Basch must show: (1) that she "availed herself of a protected right under the FMLA"; (2) that she "suffered an adverse employment action"; and (3) "that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Edgar*, 443 F.3d at 508. At a minimum, she comes up short on causation.

She has not shown a causal connection between the exercise of her FMLA rights and the termination of her employment. Even if we assume for the sake of argument that temporal proximity (between a protected act and an adverse action) by itself may establish causation at the prima facie phase of a case, that could only be "[w]here an adverse employment action occurs

3

very close in time after an employer learns of a protected activity." *Mickey v. Zeidler Tool &*

*Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). That did not happen here.

Any such claim of proximity would look to one or the other of the certifications for

intermittent leave (May 2009 and May 2011), as that was when the series of FMLA events began

and when Knoll "*learn[ed] of [the] protected activity." Id.* (emphasis added). When "some

time"—here, two-and-a-half years or six months—"elapses between when the employer learns of

a protected activity and the subsequent adverse employment action, the employee must couple

temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* Basch

has no such "other evidence." Knoll repeatedly granted Basch's FMLA requests over a period of

two-and-a-half years. And Basch provides no additional evidence that Knoll discharged her

*because* she declared an intent to take FMLA leave on November 9th. In the absence of a

cognizable claim of causation, her prima facie case must fail.

*Pretext.* Also unavailing is her claim of pretext. After Knoll offered a legitimate,

nondiscriminatory rationale for discharging Basch—"insubordinat[ion] to [her] supervisor" and a

"prior history of insubordination," R. 34-2 at 2—Basch was required to show that these

explanations were pretextual. She failed to do so.

Basch could show that Knoll's insubordination rationale was pretextual in one of three

ways: that it "(1) ha[d] no basis in fact; (2) did not actually motivate the action; or (3) w[as]

insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th

Cir. 2012). As to the first possibility, she did not demonstrate that Knoll's reason for discharging

her had no basis in fact. Mike Sale, the highest authority at the plant, made the discharge

decision based on discussions with management staff who informed him of the November 9th

incident. R. 34-1 at 2–3. Sale was concerned that such insubordination "could . . . idle 15 or

more employees for a period of time"—a fair basis in fact for discharging Basch. *Id.* at 2. Basch's disciplinary history also provided grounds for discharge. *Id.* at 3. Some highlights of that history include: insubordination (for which she received a written warning), R. 33-3 at 2; "abusive, aggressive, threatening and inappropriate" behavior (for which she was suspended for three days), R. 32-4 at 2; and absenteeism twice in one month (for which she received two warnings), R. 32-5 at 2; R. 33-1 at 2.

As to the second possibility, Basch failed to demonstrate that something other than insubordination motivated the discharge. Basch points to her FMLA status and the proximity of her FMLA claims to her termination. But even if we accept for the sake of argument that temporal proximity could establish a prima facie case, it "cannot be the sole basis for finding pretext." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012).

As to the third possibility, Basch failed to show that her insubordination was insufficient to warrant her discharge. Under Knoll's rules of conduct, "[i]nsubordination, including failure to carry out definite instructions or assignments" is an activity that is considered "extremely serious misconduct [that] may result in immediate discharge." R. 32-2 at 2. Insubordination alone thus could rightly lead to a discharge.

Attempting to fend off this conclusion, Basch raises several contrary arguments. First, in support of her prima facie case, she argues that proximity in time between her discharge and her use of FMLA leave establishes causation. More specifically, she contends that the proper measure of proximity is two days—the time between her final request for FMLA leave and her discharge. Appellant's Br. 16. But that is the wrong yardstick. Knoll did not "learn[] of [her] protected activity," *Mickey*, 516 F.3d at 525, on November 9th. Her employer knew that Basch

5

had FMLA intermittent leave certification and had used it to take leave over the past several years.

Second, Basch submits that three months—from her August 2011 week of leave to her November 2011 discharge—is the proper measure of proximity for purposes of her prima facie case. Even if we accepted Basch's timeline, our conclusion would remain the same. Absent other evidence, three months does not suffice to support a finding of causation. *See Mickey*, 516 F.3d at 525. Basch cites no case to the contrary in the FMLA context.

Third, Basch contends that three other incidents support her prima facie claim of causation. But her version of these events does not "present[] a sufficient disagreement to require submission to a jury," and the evidence is "so one-sided" that we must uphold the district court's grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). She first cites her own statement that "FMLA people [at Knoll] . . . were getting fired left and right for being on FMLA." Appellant's Br. 21; R. 40-1 at 29. But Basch's own generalization—absent any corroborating evidence or promise to present it—does not suffice to survive summary judgment. *See Anderson*, 477 U.S. at 249.

She adds that Kristie Walker, her supervisor, created a "retaliatory atmosphere" through various acts. Appellant's Br. 21. But even if Walker was antagonistic toward Basch, that does not establish causation between the decision to discharge Basch (made by Mike Sale) and Basch's repeated exercise of FMLA rights over a two-and-a-half year period.

Basch adds that Walker used an evaluation form, R. 42-2 at 2, to harass her due to her use of FMLA leave. Appellant's Br. 22. This, too, does not work. In her deposition, Basch indicated that Walker and another manager used the evaluation form to alert Basch to some

necessary areas of improvement, that Basch improved in those areas, and that no further mention was made of the evaluation. R. 40-1 at 37–38.

Fourth, Basch argues that the given reason for her discharge—insubordination—was pretextual. She claims that she never refused to re-kit the basket, she told Walker that she was going to do it, and testimony from another co-worker indicates that the incident was "not an instance of extremely serious misconduct." Appellant's Br. 24 (internal quotation marks omitted). These assertions do not establish pretext. The problem is, Basch does not contest two critical facts: (1) that Walker told her to re-kit the basket multiple times, and (2) that she never did so (even if she *planned* to do so sometime in the future). R. 40-1 at 38–40. That suffices for a discharge under Knoll's regulations because it is a "failure to carry out definite instructions or assignments." R. 32-2 at 2. Because Basch does not dispute Sale's view that her disruption had the potential to force fifteen other employees to stand idle, R. 34-1 at 2, the incident obviously could have serious consequences.

For these reasons, we affirm.

7