RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0147p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DANIEL PARIS,

       *Plaintiff-Appellant*,

  *v.*

MACALLISTER MACHINERY COMPANY, INC.;
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 324,

       *Defendants-Appellees*.

No. 25-1726

_____

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:19-cv-12053—Denise Page Hood, District Judge.

Argued: March 19, 2026

Decided and Filed: May 14, 2026

Before: CLAY, GIBBONS, and HERMANDORFER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Carla D. Aikens, CARLA D. AIKENS, P.L.C., Detroit, Michigan, for Appellant. Christopher R. Mikula, OGLETREE DEAKINS, PLLC, Birmingham, Michigan, for Appellee MacAllister Machinery Company. Jacquelyne M. Zolynsky, ASHERKELLY, PLLC, Southfield, Michigan, for Appellee International Union of Operating Engineers. **ON BRIEF:** Carla D. Aikens, CARLA D. AIKENS, P.L.C., Detroit, Michigan, for Appellant. Christopher R. Mikula, Jeffrey A. Bove, OGLETREE DEAKINS, PLLC, Birmingham, Michigan, for Appellee MacAllister Machinery Company. Jacquelyne M. Zolynsky, David J. Selwocki, ASHERKELLY, PLLC, Southfield, Michigan, for Appellee International Union of Operating Engineers.

  GIBBONS, J., delivered the opinion of the court in which CLAY, J., concurred, and HERMANDORFER, J., concurred in all but Part IV.B.1.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  This appeal arises from Daniel Paris's action against his former employer, MacAllister Machinery Company, Inc., d/b/a Michigan CAT, and the International Union of Operating Engineers, Local 324.  Paris sued MacAllister for alleged violations of the Family and Medical Leave Act (FMLA), Labor Management Relations Act (LMRA), and Michigan Elliott-Larsen Civil Rights Act (ELCRA).  He also brought LMRA and ELCRA claims against the Union.

The district court dismissed Paris's LMRA claims against MacAllister and the Union because Paris failed to plausibly allege that the Union breached the duty of fair representation.  And the court declined to exercise supplemental jurisdiction over Paris's state law claims against both defendants.  At the close of discovery, the court entered summary judgment for MacAllister on Paris's FMLA claims.

We affirm the district court's decisions.

**I.**

In our review of the district court's orders, we accept as true Paris's well-pleaded factual allegations but reject "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To review the district court's grant of summary judgment to MacAllister, we also consider "the plethora of material available in the record."  *See Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024).

Paris began working for MacAllister on August 25, 2014, and became a member of the Union around that time.  After several promotions, Paris assumed the role of "Field Technician," in which he serviced customers' CAT trucks.  DE 50-3, Depo. Tr. Paris, Page ID 470–71 (citation modified).  Paris alleged that non-union-affiliated employees discriminated against him because of his union membership, employees discriminated against him because of his younger age, and he received harsher scrutiny than his co-workers for similar behavior.

Paris had a history of disciplinary incidents and negative performance reviews. One review of his performance from 2015 to 2016 indicated that Paris's supervisors felt the need to "consistently" remind him to "complete simple daily tasks." *Id.* at 473; DE 50-10, Performance Plan, Page ID 785. On August 4, 2017, Paris received an attendance warning because he had incurred six disciplinary "points" for early departures, absences, and tardy appearances. DE 50-12, Employee Warning Notice, Page ID 795; DE 50-3, Depo. Tr. Paris, Page ID 474. Another warning dated October 13, 2017, indicated that Paris had issues of poor productivity or performance and that further issues could result in termination. MacAllister expressly noted that it would "further discipline" Paris or "terminate" his employment if these problems continued. DE 50-3, Depo. Tr. Paris, Page ID 475.

Paris's disciplinary and performance-related issues continued. For instance, a performance plan dated November 9, 2017, noted that Paris's productivity and service quality needed improvement. On June 29, 2018, MacAllister issued Paris another disciplinary warning for attendance-related issues.

On October 31, 2018, MacAllister gave Paris the opportunity to sign a "last chance" "final warning" or face termination. *Id.* at 489. Paris stated that he signed the last-chance agreement (LCA) "[u]nder duress" because if he "did not sign it, [his employment] would be terminated immediately." *Id.* While Paris's allegations reflect some ambiguity regarding whether MacAllister presented him with the LCA on October 31, 2018, or in December 2018, the record is clear that Paris signed the LCA on October 31, 2018.

Paris claimed that in December 2018 his union steward informed him that MacAllister intended to terminate his employment. Moreover, Paris alleged that the Union met with MacAllister's agents without him present. And the steward told Paris that he could no longer "help [Paris] as much" because Paris, having mentioned his possible termination to a coworker, did not "keep his mouth shut." DE 25, Am. Compl., Page ID 145. According to Paris, MacAllister's and the Union's agents acknowledged that Paris had been "targeted and treated differently," but they ordered him to "stop talking" and stop "filing grievances," and they "forced and coerced him" to sign the LCA. *Id.* at 145–46. MacAllister changed Paris's role from "Field Technician" to "Tech I," resulting in a pay reduction. *Id.* at 151 (citation modified). Paris either

"attempted to grieve" the demotion or "thought that he was in the process of grieving" it, but the Union did not process his grievance. *Id.*

Later in December, Patrick Monahan, one of Paris's supervisors, accused Paris of violating company policy by not wearing steel-toed boots. When Paris denied the accusation, Monahan tried to grab him and step on his foot to determine whether Paris was wearing the required boots. Paris emailed MacAllister's human-resources contact that he was "mentally distraught and having an anxiety attack from the harassment," so he needed to take the day off from work. DE 50-27, Depo. Tr. Paris, Page ID 1142–43. Later, Paris stated that he experienced anxiety, stress, drinking problems, loss of sleep, appetite, and weight, and "just sheer mental anguish" because he feared being singled out and fired. DE 50-3, Depo. Tr. Paris, Page ID 519. Paris did not see a "mental health professional" for these issues. *Id.*

Peter S. Israel, a human-resources employee at MacAllister, responded to Paris's email on December 20, 2018. Israel acknowledged that Monahan "invad[ed] [Paris's] personal space" and stated that Paris could inquire about FMLA leave by reaching out to another employee, Irina Itskovich. DE 50-26, Emails with Israel, Page ID 1112. Paris emailed Itskovich on December 21, 2018, to inquire about the process of taking leave for his "medical condition." DE 50-28, Decl. Irina Itskovich, Page ID 1155; DE 50-29, Emails with Itskovich, Page 1159. He asked Itskovich to indicate the forms that he and his doctor needed to provide. Itskovich sent Paris the FMLA request form that day and asked him to return it to her. The form contained "questions designed to obtain information about the reason an employee is requesting FMLA, whether the leave [would] be continuous or intermittent, and the start and end date of the leave." DE 50-28, Decl. Irina Itskovich, Page ID 1155; *see also* DE 50-29, Emails with Itskovich, Page ID 1160–61.

Itskovich stated that Paris never responded to her email or returned the FMLA Request Form. Paris later stated that he "informed" MacAllister's agents that he would be filing for intermittent FMLA leave, that he could not "remember" whether he reached out to Itskovich, and that he could not remember whether he told someone that he would be filing for leave. DE 55-8, Decl. Paris, Page ID 1343; DE 50-27, Depo. Tr. Paris, Page ID 1136–37, 1143. Moreover, Paris

stated that he "never" submitted anything from a health care provider to request leave. DE 50-27, Depo. Tr. Paris, Page ID 1143.

Within a month, the union steward informed Paris that MacAllister was terminating his employment "because he had not worn steel-toed boots on the work site[.]" DE 25, Am. Compl., Page ID 147. After learning about his termination, Paris unsuccessfully attempted to contact several of the Union's agents and texted the Union's benefits director to ask why he was being fired and request that the Union file a grievance. The director said that the Union could not file a grievance because Paris signed an LCA; a week later, the director sent Paris a list of infractions that MacAllister cited as the reasons for firing him.

This list included infractions that Paris has called "negligible." *Id.* at 148. It reflected numerous incidents from October 2018 to January 2019, including Paris's adherence to incorrect troubleshooting procedures, failure to wear required protective equipment, overcharging customers, and parking an unapproved personal vehicle in the company's yard. When asked why Paris was fired, Monahan identified Paris's "inability to follow proper procedure and [MacAllister's] work rules," as well as Paris's "performance[-]related issues[.]" DE 50-7, Depo. Tr. Monahan, Page ID 651; *see id.* at 719–20. And Israel stated that a group of employees reviewed "all the instances" and "felt at that time that the violations were too great and moved to termination." DE 50-16, Depo. Tr. Israel, Page ID 830. MacAllister's "Employee Warning Notice" dated January 11, 2019, indicated that Paris was fired because he "failed to uphold his commitments defined in his [LCA] dated 10/31/2018." DE 50-22, Employee Warning Notice, Page ID 1101.

## II.

Paris sued MacAllister and the Union on July 10, 2019. On October 6, 2020, he filed the now-operative Amended Complaint, which includes six counts: (I) a hybrid LMRA section 301 claim based on MacAllister's breach of the collective bargaining agreement (CBA) and the Union's breach of the duty of fair representation; (II) an LMRA section 301 claim based on MacAllister's breach of the CBA; (III) FMLA interference and retaliation claims against MacAllister; (IV) ELCRA harassment and age-discrimination claims against both defendants;

(V) ELCRA retaliation claims against both defendants; and (VI) an ELCRA hostile workplace environment claim against MacAllister.

On December 7, 2021, the district court dismissed Paris's LMRA claims against the Union and MacAllister for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). And the court dismissed Paris's ECLRA claims against both defendants after it declined to exercise supplemental jurisdiction over these claims. Paris filed a motion for reconsideration of the order, which the district court denied on August 15, 2022. Paris appealed from this denial and an earlier panel of our court dismissed his appeal for lack of jurisdiction.

On December 13, 2024, MacAllister moved for summary judgment on Count III, which comprised Paris's FMLA claims against MacAllister. These were Paris's sole remaining claims. The district court granted MacAllister's motion for summary judgment on August 7, 2025. On August 12, 2025, Paris timely appealed. *See* Fed. R. App. P. 4(a)(1)(A).

**III.**

We review de novo the district court's grant of summary judgment. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006). Summary judgment is appropriate if a party establishes there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under the governing law, and a dispute about a material fact is genuine if the evidence would allow a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At this stage, we must believe the non-moving party's evidence and draw justifiable inferences in that party's favor. *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995). A party opposing a motion for summary judgment must lay out "enough evidence that will be admissible at trial" to show a genuine issue of material fact. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (emphasis removed). And a "mere scintilla" of evidence supporting the non-movant's position will not suffice to survive summary judgment. *Donald v. Sybra, Inc.*, 667 F.3d 757, 760–61 (6th Cir. 2012).

We also review de novo the district court's dismissal of Paris's claims pursuant to Rule 12(b)(6). *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). We take as true well-

pleaded factual allegations in the operative complaint and construe them in the light most favorable to Paris. *See Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 865 (6th Cir. 2023). But the complaint must contain enough "factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382–83 (6th Cir. 2016) (citation modified).

**IV.**

Paris raises three main issues on appeal. First, Paris asserts that the district court improperly granted MacAllister summary judgment on his FMLA interference claim. Second, he argues that the district court improperly granted MacAllister summary judgment on his FMLA retaliation claim. Third, he argues that the district court erroneously dismissed his LMRA claims against MacAllister and the Union.

The district court properly entered summary judgment on Paris's FMLA interference claim because Paris failed to establish a genuine issue of material fact as to whether he had a "serious health condition" under the FMLA. *See* 29 U.S.C. § 2611(11). We affirm the court's entry of summary judgment on Paris's FMLA retaliation claim because MacAllister established that its termination of Paris's employment was not pretextual. Finally, we affirm the district court's dismissal of Paris's LMRA claims because Paris did not plausibly allege that the Union violated the duty of fair representation and Paris waived several arguments on appeal.

**A.**

The district court properly granted summary judgment in favor of MacAllister on Paris's FMLA interference claim. Indeed, no genuine dispute of material fact existed as to whether Paris showed an entitlement to leave under the FMLA because Paris failed to establish a "serious health condition." DE 57, Op. & Order, Page ID 1428. Paris argues that the court "usurped the role of the jury" by impermissibly weighing evidence and making credibility determinations about his "serious health condition." CA6 R. 20, Appellant Br., Page ID 10, 13–14.

Under the FMLA, an "eligible employee" may be entitled to up to twelve weeks of unpaid leave each year if he establishes, among other things, that he has a "serious health

condition" rendering him "unable to perform the functions of the position of such employee." *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).  A "serious health condition" is an "illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.113(a).  Employers may require employees claiming a "serious health condition" to support their contention with a written certification from a health care provider. *See* 29 U.S.C. § 2613(a).

Section 105 of the FMLA prohibits covered employers from interfering with, restraining, or denying employees' statutory rights, 29 U.S.C. § 2615(a)(1), and from discharging or "in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" under the subchapter, *id.* § 2615(a)(2), (b).  Section 107 provides a private right of action against employers who violate that section.  *Id.* § 2617(a)(2).  The FMLA creates two theories of recovery: the "entitlement" or "interference" theory, applicable where an employer denies an employee a statutory entitlement, and the "retaliation" theory, applicable where an employer acts against an employee because he invoked FMLA rights.  *See Edgar*, 443 F.3d at 507–08; *Milman*, 58 F.4th at 867.

To establish a prima facie case of FMLA interference, Paris must show that (1) he was an eligible employee, (2) MacAllister was a covered employer, (3) Paris was entitled to leave under the FMLA, (4) he gave MacAllister notice of his intent to take leave, and (5) MacAllister denied him FMLA benefits to which he was entitled.  *See Donald*, 667 F.3d at 761.  Paris's recovery under this theory does not depend on a showing that MacAllister intended to violate his rights. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).  Neither party disputes the first two elements and both parties focus instead on the third and fourth elements— whether Paris established a "serious health condition" entitling him to leave under the FMLA and whether Paris gave MacAllister adequate notice of his intent to take leave under the statute.

Because Paris failed to establish a "serious health condition," the district court properly granted MacAllister summary judgment on his claim.  There is no genuine issue of material fact as to whether Paris established a "serious health condition" because the record reflects that Paris

did not receive inpatient care for his anxiety or consult with a health care provider.  *See* 29 U.S.C. § 2611(11).  When asked to identify symptoms or health problems that Paris believed were associated with his experience at MacAllister, he listed anxiety, stress, drinking to deal with these issues, loss of sleep, appetite, and weight, marital problems, financial problems, and the "sheer mental anguish of knowing at any moment in the day" that he could be fired when other employees were "all doing the same thing[.]"  DE 50-3, Depo. Tr. Paris, Page ID 518–19.  Paris also stated in his email to Israel that he was "mentally distraught" and had an "anxiety attack," so he decided to take "personal time off the rest of the day."  DE 55-11, Emails with Israel, Page ID 1352–53.

But when asked whether he had seen a "mental health professional" for any of these issues, Paris stated that he had not.  DE 50-3, Depo. Tr. Paris, Page ID 519.  It is undisputed that Paris did not receive treatment or counseling for "any mental, psychiatric, psychological, or emotional issues[.]"  DE 50-27, Depo. Tr. Paris, Page ID 1142.  Because Paris did not receive "inpatient care" or "continuing treatment by a health care provider," he failed to establish a "serious health condition."  29 U.S.C. § 2611(11); 29 C.F.R. § 825.113.[1]

The district court did not improperly resolve a factual dispute.  No jury could have found in Paris's favor on this element.  *See* 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113; *see also Lackey v. Jackson County*, 104 F. App'x 483, 488–89 (6th Cir. 2004) (concluding that an employee failed to establish a "serious health condition" because he produced insufficient medical evidence).  And Paris's reliance on *Render v. FCA US, LLC*, 53 F.4th 905 (6th Cir. 2022), does not help him.  There, the plaintiff's "serious health condition" was not in dispute, as his doctor "submitted a medical certification form" and his employer responded by tentatively approving his request to take leave.  *Id.* at 910, 914.

Our inquiry thus ends with Paris's failure to establish a "serious health condition."  *See* 29 U.S.C. § 2611(11).  The district court properly entered summary judgment on Paris's FMLA

---

[1]Paris claims that the district court erred by "faulting Mr. Paris for not having yet seen a doctor," CA6 R. 20, Appellant Br., Page ID 14, but the statute states in no uncertain terms that an employee must either obtain inpatient care or receive ongoing treatment from a health care provider to establish a "serious health condition," 29 U.S.C. § 2611(11)(B).

interference claim because no genuine issue of material fact existed as to whether Paris established an entitlement to leave and because MacAllister was entitled to judgment as a matter of law.

**B.**

We likewise affirm the district court's entry of summary judgment for MacAllister on Paris's retaliation claim. Paris asserted an FMLA retaliation claim based on "circumstantial evidence" of discrimination, so we apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate whether his claim can withstand the motion for summary judgment. *See Seeger*, 681 F.3d at 283.

An FMLA retaliation or discrimination claim arises when an employer "takes an adverse employment action against the employee for exercising or attempting to exercise a right protected by the FMLA." *Milman*, 58 F.4th at 866. To state a prima facie case for retaliation, Paris was required to show the following: (1) He was "engaged in protected activity"; (2) his employer "knew [he] was engaged in protected activity"; (3) his employer "took an adverse employment action against [him]"; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Id.* at 867. Paris's burden is not "onerous[.]" *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (citation modified). If Paris establishes these elements, the burden shifts to MacAllister to show that it had a "legitimate, nondiscriminatory reason" to terminate Paris's employment. *See Render*, 53 F.4th at 920 (quotation omitted). Assuming MacAllister does so, "the burden shifts back" to Paris to show that MacAllister's "given reason was pretextual." *See id.*

The district court granted summary judgment in favor of MacAllister on Paris's retaliation claim because it concluded that Paris did not engage in a "protected activity," as he requested only information about the process of obtaining FMLA leave. *See* DE 57, Op. & Order, Page ID 1433. Paris disputes the district court's conclusion that his inquiry was not a "protected activity" and that he failed to establish a prima facie case for FMLA retaliation. *See* CA6 R. 20, Appellant Br., Page ID 17–19. MacAllister supports the district court's conclusion that Paris failed to establish a prima facie case for retaliation. Moreover, MacAllister contends

that Paris also failed to show that his termination stemmed from pretext.  We consider each argument in turn.

**1.**

We conclude that Paris established a prima facie case of FMLA retaliation.  First, we address whether Paris's inquiry was a "protected activity" under the FMLA.  Paris suggests that the district court disregarded our precedent by ruling that his inquiry about FMLA rights was not a "protected activity," creating a "loophole that would allow employers to presumptively fire employees for simply attempting to understand their rights."  CA6 R. 20, Appellant Br., Page ID 11; *see Render*, 53 F.4th at 920.  We agree with Paris that the court erred in finding that his inquiry about FMLA leave was not a "protected activity."

Paris received Israel's email alerting him to the "option of FMLA and/or sick leave" if he qualified for coverage.  DE 50-26, Emails with Israel, Page ID 1112.  At this point, Paris sent Itskovich an email stating the following:  "[I] am contacting you in regards for [sic] the process necessary to request FMLA leave for my medical condition.  [P]lease let me know what forms you will be needing filled out and what is required from my doctor."  DE 50-28, Decl. Irina Itskovich, Page ID 1155; DE 50-29, Emails with Itskovich, Page ID 1159.  Itskovich replied the following that same day:  "Please complete the attached form and send it back to me at your earliest convenience."  DE 50-28, Decl. Irina Itskovich, Page ID 1155; DE 50-29, Emails with Itskovich, Page ID 1158.  Itskovich's email included an FMLA request form with "questions designed to obtain information about the reason an employee is requesting FMLA, whether the leave will be continuous or intermittent, and the start and end date of the leave."  DE 50-28, Decl. Irina Itskovich, Page ID 1155; DE 50-29, Emails with Itskovich, Page ID 1160–61.  Paris "never responded" to Itskovich's email and "never returned the Request for FMLA form."  DE 50-28, Decl. Irina Itskovich, Page ID 1155.

As we have stated, an FMLA retaliation claim "arises when an employer takes an adverse employment action against the employee for exercising or *attempting to exercise* a right protected by the FMLA."  *Milman*, 58 F.4th at 866 (emphasis added).  Subsection 105(a)(1) renders it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the

attempt to exercise, any right provided[.]"  29 U.S.C. § 2615(a)(1).  And subsection 105(a)(2) renders it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the relevant subchapter.  *Id.* § 2615(a)(2).  Some confusion exists as to whether a plaintiff may plead an FMLA retaliation claim based on only one or either of these subsections, yet "[u]nder this statutory language, it makes little sense to cabin solely to § 2615(a)(2) retaliation claims that are based on the exercise or attempt to exercise FMLA rights."  *See Milman*, 58 F.4th at 867 ("Logically, an adverse employment action in response to the exercise of (or the attempt to exercise) a statutory right— retaliation for engaging in protected activity—is a form of interference or restraint on the ability to exercise that statutory right.  Constraining § 2615(a)(1) to wrongful denials of FMLA entitlements only and making § 2615(a)(2) the only avenue for recourse against adverse employment action would ignore the plain text of § 2615(a)(1).").

Based on this understanding of subsection 105(a)(1), we have already decided that for the FMLA to protect the "exercise or attempt to exercise" statutory rights, the term "protected activity" under the statute must include an employee's "first step" in requesting leave.  *Id.* at 869 (citation modified).  In *Milman*, we held that an employee's "first step," such as his "initial request for leave," is a "protected activity."  *Id.*  We noted that, in some contexts, a plaintiff must have established entitlement to bring an FMLA retaliation claim.  *Id.* at 868.  But in *Milman*, as here, ultimate entitlement is not a "prerequisite to an FMLA retaliation claim" because the plaintiff never took leave.  *See id.* at 868.  And here, it is logical not to require Paris to show entitlement for his retaliation claim.  To grant summary judgment on an FMLA retaliation claim under these circumstances would allow an employer to fire an employee who made a protected initial request for leave—even before the employer's determination of whether the employee was entitled to take leave.  *See McArdle v. Town of Dracut/Dracut Pub. Schs.*, 732 F.3d 29, 36 (1st Cir. 2013) ("It would seem too, that firing an employee for asking would also frustrate the aims of the Act even if the inquiring employee turns out to be ineligible.  An 'ask at your peril' approach could deter employees, including eligible employees uncertain of the extent of their rights, from taking the first step necessary to exercise their rights.").

We now face the related question of whether the statute protects an employee's right to request FMLA paperwork before having requested leave.  Our reasoning in *Milman* proves instructive.  There, we addressed "whether the FMLA protects the right of an employee to inquire about *and* request leave even if it turns out that she is not entitled to such leave."  *See Milman*, 58 F.4th at 868 (emphasis added).  Because the FMLA "*requires* employees to put their employers on notice . . . by making a formal request to the employer," the statute protects an "employee's initial request for leave[.]"  *Id.* at 868–69 (emphasis in original).  Indeed, "FMLA rights and the statute's purpose would be significantly diminished if employers could fire an employee who simply took the required initial steps to access FMLA leave."  *Id.* at 869.

In *Milman*, though, we did not merely conclude that the FMLA protects an employee's right to "inquire about *and* request leave[.]"  *See id.* at 868 (emphasis added).  We also anticipated some of the facts before us here.  *See id.* at 869 ("Suppose that an employee, intending to exercise her FMLA rights, meets with her employer and asks questions concerning her FMLA rights, then is fired for doing so.").  FMLA protection is necessary "during the step required to initiate the FMLA's process" because, "[w]ithout protection, employees would be discouraged from taking authorized initial steps—including preparing or formulating a request to access FMLA benefits."  *Id.*  This "first step . . . must fall within the scope of protected activity" to give effect to the Act's aim to protect the "exercise or attempt to exercise" FMLA rights.  *See id.* (citation modified); *Ziccarelli v. Dart*, 35 F.4th 1079, 1085–86 (7th Cir. 2022).  Thus, an initial step—such as a request for the paperwork necessary for an employee to request FMLA leave—may constitute "protected activity."  *See Milman*, 58 F.4th at 869; *see also* 29 U.S.C. § 2613(a).

Paris stated in his email that he was "contacting" Itskovich, whom Israel had directed Paris to email, regarding "the process necessary to request FMLA leave" for his "medical condition."  DE 50-29, Emails with Itskovich, Page ID 1159.  Further, Paris asked that Itskovich "let [him] know what forms [she] will be needing filled out and what is required from [his] doctor."  *Id.*  Paris took "the step required to initiate the FMLA's process" by requesting paperwork, and this "first step . . . must fall within the scope of protected activity" for our law to uphold the Act's aim of protecting the "exercise or attempt to exercise" FMLA rights.  *See*

*Milman*, 58 F.4th at 869.  Accordingly, we hold that Paris's request for FMLA paperwork under these circumstances was a "protected activity" under the FMLA.  *Id.*

To hold otherwise would contravene the Act's stated aim of protecting the "exercise of or the attempt to exercise" FMLA rights.  29 U.S.C. § 2615(a)(1); *see Milman*, 58 F.4th at 867–69.  If we concluded that an initial inquiry for FMLA paperwork were not a "protected activity," any employer could avoid liability under *either* of the FMLA's theories by employing one simple tactic:  Fire any employee immediately after a request for paperwork or information pertinent to FMLA leave.  If we so decided, an employer could eliminate all risk of liability for a wrongful denial of a statutory entitlement by firing an employee shortly after the employee requested FMLA paperwork, as the employee would be unable to establish entitlement without the required paperwork.  *See* 29 U.S.C. § 2613(a) ("An employer may require that a request for leave . . . be supported by a certification issued by [a] health care provider . . . .  The employee shall provide, in a timely manner, a copy of such certification to the employer.").  An employer who did this could also avoid liability for any wrongful retaliatory discharge, as the employee would be unable to show that he "engaged in protected activity" if he requested but did not yet complete and submit the required paperwork.  *See Milman*, 58 F.4th at 867.  At bottom, our law would fail to effectuate the FMLA's aim of protecting the "exercise of or attempt to exercise" FMLA rights if an employer could evade liability as a matter of course by firing an employee the moment he requested FMLA paperwork.  *See* 29 U.S.C. § 2615(a)(1); *Milman*, 58 F.4th at 867–69.

We hold that Paris's request for paperwork was a "protected activity," so Paris satisfied the first element of the prima facie case for FMLA retaliation.  *See Milman*, 58 F.4th at 869.  And we need not speculate as to the full set of circumstances under which the FMLA would protect an employee's initial inquiry for FMLA-related paperwork or information.  It is true that Paris did not respond after Itskovich sent him the relevant paperwork.  Yet our conclusion about Paris's request for paperwork relates only to the "protected activity" element of an FMLA *retaliation* claim, so the question of how long an employee has to submit the paperwork he requested and received does not affect this analysis.  *See id.* at 867 (listing elements of the prima facie case for retaliatory discharge); *cf.* 29 C.F.R. § 825.305(b) (specifying the timeframe within which an employee "must provide the requested certification to the employer").  Of course, the

length of the period between an employee's "protected activity" and an employer's "adverse employment action" may prove relevant, but at the later fourth step of the inquiry for FMLA retaliation. *See Seeger*, 681 F.3d at 283–84 (citation modified).

The district court thus erred by concluding that Paris's inquiry was not a "protected activity" under the FMLA. *See* DE 57, Op. & Order, Page ID 1431–33. To reach its conclusion, the court stated that Paris "only requested information about the process of requesting FMLA leave." *Id.* at 1432–33. On this basis and because Paris did not provide "any notice . . . that he intended to take FMLA leave due to anxiety," the court decided that his request did not constitute a "protected activity." *Id.* at 1433.

That conclusion was incorrect. First, as we have explained, Paris's request for information regarding FMLA leave was protected as a "step required to initiate the FMLA's process" because the statute protects an employee's "exercise or attempt to exercise" FMLA rights. *See Milman*, 58 F.4th at 869. If we do not afford this step any protection, employees will be "discouraged from . . . preparing or formulating a request to access FMLA benefits." *See id.* Second, the district court applied the wrong standard when it found that Paris's activity was not "protected" based on his failure to provide "notice . . . that he intended to take FMLA leave due to anxiety." *See* DE 57, Op. & Order, Page ID 1433. The "notice" requirement for an FMLA *interference* claim requires that an employee provide an employer with enough information to be able to determine whether he is entitled to leave based on criteria such as a "serious health condition," *see Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999), but that standard does not govern the "protected activity" element in a retaliation claim, *see, e.g.*, *Milman*, 58 F.4th at 868–69. For an FMLA retaliation claim, a plaintiff must show that the employer knew that he engaged in protected activity. *See id.* at 867.

Moreover, the district court cited *Render* for the proposition that an employee's asking for an FMLA request form does not "rise to the level of engaging in protected activity[.]" DE 57, Op. & Order, Page ID 1433. But *Render* did not hold that an employee must "properly request FMLA leave" for his activity to be protected or that inquiring about FMLA rights or paperwork is not protected. *See* 53 F.4th at 920. The district court also relied on one of our unpublished opinions, *Basch v. Knoll, Inc.*, 619 F. App'x 457, 461 (6th Cir. 2015), one of two

cases cited in *Render* for the proposition that an employee engages in a "protected activity" when the employee "gives sufficient notice of his intent to take FMLA leave." *See* DE 57, Op. & Order, Page ID 1433; *Render*, 53 F.4th at 920. But *Basch* contains no discussion of what constitutes a "protected activity," as it focuses primarily on causation. *See* 619 F. App'x at 459–60. The other unpublished case cited in *Render* for that proposition, *Festerman v. County of Wayne*, also does not meaningfully discuss the "protected activity" element. *See* 611 F. App'x 310, 319 (6th Cir. 2015) (noting only that "[t]here is no dispute that Festerman satisfied the first element of the retaliation analysis."). While the *Basch* and *Festerman* plaintiffs established a "protected activity," neither opinion furnishes any reasoning as to whether inquiring about leave is not or should not be protected. *See Basch*, 619 F. App'x at 459–60; *Festerman*, 611 F. App'x at 319. The district court therefore mistakenly concluded that no genuine issue of material fact existed as to whether Paris engaged in a "protected activity" under the FMLA.

On appeal, MacAllister presses that concluding that Paris's inquiry is "protected" would mean that an employee could "request information about FMLA leave, go completely unresponsive to an employer's permissible requests for additional information for an indefinite period . . . , and yet somehow claim FMLA retaliation[.]" CA6 R. 29, MacAllister's Br., Page ID 41. Yet it is incorrect that an employee who merely requests information will necessarily establish FMLA retaliation. Indeed, an employee could still fail to satisfy the other three elements of the prima facie case or fail to establish an FMLA violation at the burden-shifting stage. Even if a plaintiff established a prima facie case for retaliation, a defendant could still show that it had a "legitimate, nondiscriminatory reason" for taking an action adverse to the plaintiff. *See Render*, 53 F.4th at 920 (quotation omitted).

The district court thus erred in determining that Paris's request for FMLA paperwork was not a "protected activity." In doing so, the district court did not evaluate the remaining elements of Paris's FMLA retaliation claim on the basis that he failed to establish this element.

We conclude that Paris satisfied the remaining elements of the prima facie case for FMLA retaliation. Paris satisfied the second element because MacAllister received and responded to Paris's inquiry, so MacAllister knew that Paris "engaged in protected activity"

under the FMLA.  *See Milman*, 58 F.4th at 867.  As for the third element, MacAllister fired Paris, so MacAllister took an adverse employment action against him.  *See id.*

With respect to the fourth element, Paris established a "causal connection" between his inquiry and MacAllister's termination of his employment because he showed that MacAllister terminated his employment in early January 2019 after his FMLA inquiry in late December 2018.  *See Bryson*, 498 F.3d at 570–71.  Our law recognizes that such close temporal proximity between a protected activity and an adverse employment action can support an inference of retaliation.  *See Seeger*, 681 F.3d at 283–84 (collecting cases).  We have even held that a three-month interval between an employee's protected activity and an employer's termination suffices to give rise to such an inference.  *Bryson*, 498 F.3d at 571.  After all, "the burden of proof at the prima facie stage is minimal," and an employer may still "present evidence of a legitimate, non-discriminatory reason for terminating" an employee.  *Id.* (citation modified).  Paris therefore established a prima facie case of FMLA retaliation.

**2.**

We nonetheless affirm the district court's grant of summary judgment on Paris's retaliation claim because Paris cannot show that his termination was pretextual.  Under the *McDonnell Douglas* burden-shifting framework, MacAllister must "articulate a legitimate, nondiscriminatory reason for [Paris's] discharge" if Paris proves a prima facie case of FMLA discrimination.  *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).  If MacAllister "articulates such a reason," the burden shifts back to Paris to show that MacAllister's "articulated reason is in reality a pretext to mask discrimination."  *See id.*

MacAllister satisfied its burden of showing that its reason for terminating Paris's employment was legitimate and nondiscriminatory.  As an initial matter, MacAllister identified Paris's "long history of performance, attendance, and conduct[-related] issues," and reiterated that MacAllister introduced into evidence the "numerous disciplinary counselings and warnings" that it had issued Paris for over two years prior to his termination.  *See* DE 50, Def.'s Mot. for Summ. Judgment, Page ID 420–21.  Paris struggled to complete simple tasks, received numerous attendance warnings for early departures, absences, and tardy appearances, and produced work

of inadequate quality. Even separately from Paris's longer disciplinary history, Paris entered into the LCA, under which any further violation would warrant termination. According to Israel, MacAllister fired Paris after reviewing all relevant instances because the "violations were too great" and Paris "failed to abide by" his commitments in the LCA. DE 50-16, Depo. Tr. Israel, Page ID 829–30. We agree with MacAllister that a single violation of MacAllister's policies following Paris's entry into the LCA would have constituted a valid, nondiscriminatory reason for his termination. *See Skrjanc*, 272 F.3d at 315.

Paris then failed to carry the burden of showing that any of MacAllister's reasons were "in reality a pretext to mask discrimination." *See id.* He failed to do so because he provided no evidence that MacAllister's termination was pretextual. *See Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 323–25 (6th Cir. 2018). And temporal proximity alone cannot support a showing of pretext. *Seeger*, 681 F.3d at 285. There is no genuine issue of material fact as to whether MacAllister's termination of Paris's employment was pretextual, and MacAllister was entitled to judgment as a matter of law on Paris's FMLA retaliation claim.

## C.

The district court dismissed Paris's LMRA claim against the Union for breaching the duty of fair representation. The court dismissed Paris's claim after deciding that his complaint failed to plausibly allege that the Union did not grieve his demotion and that the Union's refusal to investigate or grieve his termination represented a breach of the duty.

On appeal, Paris claims that he "plausibly alleged a breach of the Union's duty of fair representation," but he does not address whether MacAllister breached the CBA. *See* CA6 R. 20, Appellant Br., Page ID 11–12, 19–21. His argument addresses the district court's analysis, which dismissed Paris's claim based only on his failure to plausibly allege that the Union breached its duty. It was appropriate for the district court to examine only one element of Paris's claim, as the failure of one element means that the other "must necessarily fail with it." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990). A hybrid LMRA section 301 suit "presents claims against the employer for breach of the CBA and against the union for breach of the duty of fair representation." *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 384 (6th Cir. 1991).

To press a successful hybrid section 301 claim, a plaintiff must establish "(1) that the employer breached the collective bargaining agreement *and* (2) that the union breached its duty of fair representation." *Garris v. Int'l Union United Auto., Aerospace, & Agric. Implement Workers of Am.*, 417 F.3d 590, 594 (6th Cir. 2005) (quotation omitted) (emphasis added). A plaintiff cannot recover against *either* defendant unless he satisfies *both* elements. *Bagsby v. Lewis Bros., Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987) ("[Plaintiff] must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. Unless [plaintiff] demonstrates both violations, he can[]not succeed against either party." (emphasis in original) (internal citation omitted)). A union owes its members the "'duty to represent them adequately as well as honestly and in good faith.'" *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994) (quoting *Air Lines Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75 (1991)). To establish that a union breached the duty, a plaintiff must show that the union's actions or omissions in handling his grievance were either "arbitrary, discriminatory, *or* in bad faith." *Id.* at 584 (quotation omitted) (emphasis in original). A plaintiff need make only one of these three showings to bring a successful section 301 claim. *Id.*

The district court properly determined that Paris failed to "allege enough facts to make it plausible" that the Union was liable. *See Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). The court decided that Paris did not "adequately allege[] that he asked the Union to grieve his *demotion*, it was required to do so, and it failed." DE 33, Op. & Order Granting Mot. to Dismiss, Page ID 287 (emphasis added). The court also concluded that Paris failed to plausibly allege that the Union's failure to investigate or grieve his *termination* was arbitrary, discriminatory, or in bad faith. On appeal, Paris asserts that he plausibly alleged that both aspects of the Union's conduct were "arbitrary, discriminatory, *and* in bad faith." CA6 R. 20, Appellant Br., Page ID 19–21 (emphasis added). We must consider each of these elements to determine whether the Union violated its duty to Paris. *See Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010); *Black*, 15 F.3d at 584–85.

While Paris did not use the term "demotion" in his Amended Complaint, he gestured briefly to the Union's alleged failure to investigate his "pay-cut." DE 25, Am. Compl., Page ID 151. Paris provided little description of what he now calls a demotion, and he was unsure

regarding whether he grieved the demotion or only "thought he was in the process of grieving" it. *Id.* It is not clear how the Union could have "failed to process the grievance" if Paris did not request that it do so. *See id.* Because Paris failed to allege that he requested the Union to grieve his demotion, he did not allege facts making it "plausible," not "merely possible," that the Union is liable. *See Agema*, 826 F.3d at 331; *Meritt*, 613 F.3d at 619.

The district court noted these deficiencies and correctly concluded that Paris's failure to furnish "detail as to any request to grieve the demotion" was "fatal." DE 33, Op. & Order Granting Mot. to Dismiss, Page ID 285. In fact, the court's analysis of Paris's deficient pleading was charitable and worked through inferences based on allegations scattered throughout his complaint. Without the baseline allegations that Paris asked the Union "to grieve his demotion, it was required to do so, and it failed," we need not determine whether one of the Union's alleged omissions amounted to arbitrary, discriminatory, or bad-faith conduct and marked a breach of the duty. *See id.* at 287.

Paris also insufficiently alleged that the Union breached its duty by coercing him into signing the LCA and later failing to grieve or investigate his termination. To establish bad faith, a plaintiff must allege that the defendant acted with "an improper intent, purpose, or motive . . . encompassing fraud, dishonesty, and other intentionally misleading conduct." *Merritt*, 613 F.3d at 619 (citation modified). Paris did not support his bare allegations of force and coercion with any detail that would establish a plausible likelihood that the Union's conduct with respect to the LCA was arbitrary, discriminatory, or in bad faith. Paris alleged that one of the Union's agents believed that he could get the "charges" against Paris "dropped," so the Union's conduct in forcing and coercing Paris to sign the LCA was "at best perfunctory, and at worst, bad faith." DE 25, Am. Compl., Page ID 150. Without explaining how the Union "forced and coerced" him to sign the LCA, Paris repeated the allegations and stated that the Union did not fulfill "any obligations to proceed through the grievance process" to which he was entitled. *Id.*

Before the district court, Paris briefly expanded on this alleged coercion. He stated that the Union's agents "talked him into . . . receiving a pay cut." DE 29, Pl.'s Response to Def.'s Mot. to Dismiss, Page ID 231. Paris, however, cannot cure the deficiencies in his complaint through statements in briefing. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th

Cir. 2020).  Yet even if we considered this thin description of being talked into a pay cut, its lack of detail would bar a showing that the Union acted with an improper intent, purpose, or motive in its communications to Paris regarding the LCA.  Paris failed to sufficiently allege that the Union acted in bad faith.  *See Merritt*, 613 F.3d at 619–20.

Moreover, Paris waived any argument on appeal that the Union's conduct with respect to the LCA was arbitrary or discriminatory.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).  On appeal, he failed to sufficiently argue that he pled the Union's conduct fell "'so far outside a wide range of reasonableness that it [was] wholly irrational'" or was "'unrelated to legitimate union objectives.'"  *See Merritt*, 613 F.3d at 619 (quoting *O'Neill*, 499 U.S. at 78, and *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).

The district court also concluded that Paris failed to show that the Union breached its duty by failing to grieve or investigate his termination, but Paris devoted insufficient attention to this issue and thus waived any argument regarding it on appeal.  *See McPherson*, 125 F.3d at 995–96.  For the same reason, Paris waived any argument regarding the court's dismissal of his ELCRA claims.  *See id.*  The district court therefore properly dismissed Paris's LMRA claims against MacAllister and the Union.

## V.

For the foregoing reasons, we affirm the district court's decisions.